**Eugene BROOKS, Plaintiff,**

v.

**STANDARD OIL COMPANY (New Jersey) and the Securities and Exchange Commission, Defendants.**

**No. 69 Civ. 655.**

United States District Court
S. D. New York.

Dec. 30, 1969.

Eugene Brooks, plaintiff, pro se.

Sullivan & Cromwell, New York City, for Standard Oil Co. (New Jersey).

LASKER, District Judge.

Defendant Standard Oil Company (New Jersey) ("Jersey") moves, pursuant to Fed.R.Civ.Proc. § 12(b) (6), to dismiss plaintiff's complaint on the ground that it fails to state a claim upon which relief can be granted. In the alternative, Jersey moves for summary judgment under Rule 56, Fed.R. Civ.Proc.

The complaint seeks a declaratory judgment that a shareholder resolution proposed by plaintiff is a proper subject for action by security holders, that Jersey could not legally omit the proposal and a statement in support of it from the proxy statement which it planned to mail in connection with its annual meeting for 1969,[1] and that Jersey must in-

1. Although the complaint sought relief with respect to the 1969 annual meeting, which has already taken place, both parties have agreed that the decision of this motion shall determine whether plaintiff's proposed resolution is to be in-

clude plaintiff's proposal and the supporting statement in its own proxy material. The complaint also seeks to enjoin Jersey from mailing any proxy material unless the plaintiff's proposal is included. There being no genuine issue of material fact, and the law entitling defendant to judgment, summary judgment for the defendant is granted.

■ Plaintiff, an attorney, has written at least two articles on international policy aspects of the utilization of underwater natural resources. He became the holder of record of ten shares of Jersey common stock on November 26, 1968. Less than a month later he called Jersey to inquire about the mechanics of submitting a resolution for inclusion in the proxy material which Jersey mails to its shareholders in advance of their annual meeting. After receiving the relevant information from Jersey, plaintiff on January 15, 1969, submitted the following proposed resolution to Jersey:

Resolved that the Standard Oil Company of New Jersey continue and intensify its efforts to encourage the exploration and development of petroleum reserves beneath the world's continental shelves, continental slopes and deep ocean bottoms; that the Company in order to insure the protection of capital investment in these underseas areas, encourage the creation of a stable international regime having jurisdiction over the petroleum and other mineral resources of underseas areas beyond the limits of national jurisdiction.

Plaintiff also submitted the following statement in support of the above resolution:

The world's population increase means that the demand for fossil fuels will rise correspondingly.

Recoverable reserves in the world's underseas areas will help keep pace with world petroleum needs. But the major portion of these underwater areas is the ocean bottom beyond the limits of national jurisdictions. No governing body now exists to settle conflicts and regulate production in underwater areas beyond national jurisdictions.

Standard Oil should stimulate development of petroleum products beneath the world's waters. The Company should, additionally, promote a stable international regime to encourage international access to the deep sea bottom and to avoid economic anarchy.

Jersey decided that the proposal was not appropriate for inclusion on its agenda for stockholder action or in its proxy statement. Accordingly, pursuant to Proxy Regulation 14a–8(d),[2] it filed with the Securities and Exchange Commission ("S.E.C.") the proposed resolution and plaintiff's supporting statement, as well as its own reasons for

---

cluded in the Jersey proxy material for the 1970 annual meeting.

2. Rule 14a–8(d), 17 C.F.R. § 240.14a–8 (d):
"Whenever the management asserts that a proposal and any statement in support thereof may properly be omitted from its proxy statement and form of proxy, it shall file with the Commission * * * a copy of the proposal and any statement in support thereof as received from the security holder, together with a statement of the reasons why the management deems such omission to be proper in the particular case, and, where such reasons are based on matters of law, a supporting opinion of counsel . . . ."
Plaintiff contends that the Commission's acting on this matter in spite of Jersey's failure to enclose the "supporting opinion of counsel" referred to in Rule 14a–8 resulted in the Commission violating its own rule. While it would appear that the Division of Corporate Finance's decision was based on a matter of law, it is difficult to perceive any harm to plaintiff resulting from the fact that the Division was not aided by an opinion of Jersey's counsel. Such an opinion, presumably, would have invoked the very authorities which Jersey cites on this motion, and those authorities substantiate the Division's position. It is for this reason, probably, that plaintiff does not press the point. Unlike Smith v. Resor, 406 F.2d 141 (2d Cir. 1969), the one case which he cites, the agency's technical failure to follow its own procedure here resulted in no harm to plaintiff.

omitting the proposal. As stated in Jersey's January 17, 1969 letter to the Commission, those reasons were: first, that "the proposal as submitted is not a proper subject for action by security holders"; second, that the "proposal constitutes a recommendation or request that the management take action with respect to a matter relating to the conduct of the ordinary business operations of the Company"; third, that "the proposal clearly appears to be primarily for the purpose of promoting a general economic or political cause, although the general subject is obviously one of vital interest to the Company." Paragraph (c) of Rule 14a–8, promulgated by the Commission pursuant to Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) (1964), entitles management to omit a proposal from its proxy material for any of the above stated reasons.[3]

The Division of Corporate Finance of the S.E.C. advised both plaintiff and defendant, by separate letters dated January 24, 1969, that it

"will not recommend any action to the Commission if this proposal is omitted from the management's proxy soliciting material for the company's annual meeting * * * pursuant to Rule 14a–8(c) (1) * * * For this reason the Division does not believe it is necessary to consider the other reasons cited by management for omitting the proposal."

The provision referred to by the Division of Corporate Finance is the one allowing management to omit a proposal from its proxy statement if " * * *

as submitted [it] is, under the laws of the issuer's domicile, not a proper subject for action by security holders." Rule 14a–8(c) (1), 17 C.F.R. § 240.14a–8(c) (1).

Plaintiff responded to Jersey's January 17th letter to the S.E.C., a copy of which he had received, by writing to the S.E.C. himself, on the same day on which the Division of Corporate Finance advised the parties of its decision not to recommend action. In his letter to the Commission, plaintiff noted that before listing its objections to his proposed resolution Jersey in its letter to the Commission had stated that "the management is in full agreement with the first half of the proposal" and had further stated that "some form of international regime is an avenue that deserves thoughtful investigation," although it expressed doubts about the second half of the proposal "owing to the vagueness of the term 'international regime,' the problem of timeliness, and the question of how far a business corporation can properly pursue such a matter beyond representations to its own government." Plaintiff added:

"The second clause is, of course, the heart of the proposal. The prime object of this clause is to serve the welfare of our company by ensuring the protection of investment of capital and machinery. * * *"

In addition, plaintiff attempted to demonstrate that the resolution was indeed a proper subject for shareholder action because it applied to "high policy matter" considerations, as opposed to "the running of the business in an *operational*

3. The relevant portion of Rule 14a–8(c), 17 C.F.R. § 240.14a–8(c), reads as follows:
"(c) * * * the management may omit a proposal and any statement in support thereof from its proxy statement * * *
"(1) If the proposal as submitted is, under the laws of the issuer's domicile, not a proper subject for action by security holders; or
"(2) If it clearly appears that the proposal is submitted by the security holder primarily for the purpose of enforcing a personal claim or redressing a personal grievance against the issuer or its management, or primarily for the purpose of promoting general economic, political, racial, religious, social or similar causes; or
" * * * * *
"(5) If the proposal consists of a recommendation or request that the management take action with respect to a matter relating to the conduct of the ordinary business operations of the issuer."

phase (emphasis in original)"; that " 'international regime' has a precise meaning in international law * * * "; that Jersey in an effort to encourage the matter not only could make representations to the United States government, but could "include material on the subject in its publications, engage in institutional advertising, * * * participate in academic fora * * * [and] offer its own detailed formula for an international legal structure * * * Some of these matters could be left to the discretion of the Board of Directors."

The Division of Corporate Finance responded to plaintiff as follows:

"The additional information and arguments you have submitted * * * clearly indicate your vital and intelligent desire for international legal protection of commercial interests in the exploration and development of the world's underseas resources * * *

"However, after full consideration of the matter, we remain unable to alter the conclusion * * * [previously reached.]"

Within a week of receipt of the above, plaintiff commenced this action.

As we have already seen, in declining to recommend that the Commission take any action against Jersey's omission of the proposed resolution from its proxy materials, the Division of Corporate Finance determined that the resolution was not a proper subject for shareholder action. That determination must be made according to the law of the state in which the issuer is incorporated. Rule 14a–8(c) (1). The management bears the burden of proof of showing that the proposal "is not a proper one for inclusion in management's proxy material." Sec. Ex. Act. Rel. 4979 (1954) 2. Once it has done so, and the Commission finds that the proposal is improper, the latter's determination should be respected. As stated in Dyer v. Securities and Exchange Commission, 266 F. 2d 33, 38 (8th Cir. 1959), cert. den. 361 U.S. 835, 80 S.Ct. 86, 4 L.Ed.2d 75

(1959), reh. den. 361 U.S. 911, 80 S.Ct. 253, 4 L.Ed.2d 181 (1959):

" * * * * as to orders not of general character but made in relation to the facts of a particular proxy-solicitation situation, with directions going beyond the rules and regulations, * * * a court [must] accept the Commission's judgment, unless it can be said that what has been done is without any rational basis on all the elements involved."

In interpreting an administrative regulation, the court must look to the administrative interpretation as "the ultimate criterion * * * which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). The reason for this deference to the administrative agency's construction of its rules was set forth by Judge Ryan in Peck v. Greyhound Corp., 97 F.Supp. 679, 681 (S.D.N.Y. 1951). In that case the S.E.C. had ruled that the management could decline to include in its proxy statement a proposal submitted by the plaintiff for proxy distribution. The proposal consisted of a recommendation that the corporation management consider the advisability of abolishing the segregated seating system in buses in the South. Judge Ryan refused to enjoin the corporation from sending out its materials without including plaintiff's proposal. As he explained:

"Rules and regulations adopted by administrative agencies pursuant to Congressional authorization are best interpreted, in the first instance, by the agency which has been entrusted with the power and authority to write them. Here, the Commission has interpreted and construed its own rule contrary to that which plaintiff contends is the proper interpretation. This court cannot hold, on the proof before it, unaided as it is by the vast experience of daily contact with the practical workings of this rule (which the Commission has had), that the in-

814

terpretation should be set aside * * *."

Thus, it is clear that if the Commission correctly construed New Jersey law, its finding should be upheld. A review of the authorities establishes that the Commission has correctly construed the New Jersey law. The relevant statute reads:

"The business and affairs of a corporation shall be managed by its board, except as in this act or its certificate of incorporation otherwise provided." (New Jersey Stat.: 14A:6–1.)

Standard Oil's by-laws also provide that "the business and affairs of the corporation shall be managed by its board of directors."

Each party here stresses that the other cannot point to any New Jersey judicial decision that squarely holds that plaintiff's proposal is or is not a proper subject for shareholder action. But the cases do indicate that the scope of management authority is very broad indeed. In Ellerman v. Chicago Junction Ry. Co., 49 N.J.Eq. 217, 232, 23 A. 287, 292 (Chancery 1891), the court stated the general rule:

"Questions of policy of management * * * are left solely to the honest decision of the directors, if their powers are without limitation and free from restraint. To hold otherwise would be to substitute the judgment and discretion of others in the place of those determined on by the scheme of incorporation."

In Laredef Corporation v. Federal Seaboard Terra Cotta Corporation, 131 N. J.Eq. 368, 25 A.2d 433, 437 (Court of Chancery, 1942), the court noted:

"It is a well-settled rule of law that questions of business policy devolve upon the officers and directors * * *. It is peculiarly their duty and prerogative to evaluate the business outlook."

Laredef makes it amply clear that plaintiff's heavily stressed proposition that "policy-making matters" are beyond the directors' control (an assertion he makes in his letter to the Commission and again in his Memorandum of Law) is not correct.

The Commission's conclusion that the resolution is not appropriate for stockholder action is fortified by the general trend of the decisions concerning stockholder proxy proposals. As summarized in Loss, Securities Regulation, Vol. II, pp. 906–908 (2d ed., 1961), most of the shareholder proposals which have been approved concern

"the whole field of the qualification, selection, and remuneration of the directors and officers and their accountability and reporting to stockholders." [Citation to Heller, Corporate Democracy: Stockholder Proposals, 4 Va. L. Weekly Dicta Compilation 72, 75–76 (1953).]

Professor Loss' compilation of proposals which have been approved and disapproved indicates the correctness of the Commission's decision here.

In view of the fact that under Rule 14a–8(c), 17 C.F.R. § 240.14a–8, "any" of the circumstances specified therein may justify management's omission of a shareholder proposal, the Division of Corporate Finance did not consider two further reasons contained in the Rule and advanced by defendant Jersey in addition to its claim as to the impropriety of the subject matter for shareholder consideration. In their papers submitted on this motion, however, the parties discussed those asserted grounds, which were (a) that the proposal related "to the conduct of the ordinary business operations of the Company," and (b) that the proposal was made "primarily for the purpose of promoting a general economic or political cause." Since it is abundantly clear that the determination made by the Commission should be sustained, it is not necessary to resolve these matters here. For that reason, the court does not determine what plaintiff's dominant motive was, but, like the Division of Corporation Finance, does recognize and commend his "vital and

intelligent desire" for an efficient, orderly, and peaceful utilization of our planet's natural resources.

The motion for summary judgment is granted. Settle order on notice.