**CONTINENTAL OIL COMPANY, a Delaware corporation, Plaintiff,**

v.

**Arthur F. BURNS, individually and as Chairman of the Board of Governors of the Federal Reserve System, et al., Defendants.**

**Civ. A. No. 3909.**

United States District Court,
D. Delaware.

Sept. 15, 1970.

Alexander L. Nichols, George Tyler Coulson and Joseph C. Kelly, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiff.

Joseph C. Kelly, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and Frederick M. Rowe, of Kirkland, Ellis, Hodson, Chaffetz, Masters & Rowe, Washington, D. C., of counsel, for American Petroleum Institute, amicus curiae.

F. L. Peter Stone, U. S. Atty., Wilmington, Del., William D. Ruckelshaus, Asst. Atty. Gen., Harland F. Leathers and A. James Barnes, Attys., Dept. of Justice, Washington, D. C., for defendants.

## OPINION

LATCHUM, District Judge.

This action was brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, by Continental Oil Company ("Continental") against the Board of Governors of the Federal Reserve System ("the Board") and the Federal Trade Commission ("the Commission") seeking a declaratory judgment that Interpretation § 226.401 of the Truth in Lending Act [1] ("the Act"), issued by the Board on April 22, 1969, is invalid. The American Petroleum Institute was granted leave to appear as *amicus curiae* and to file a memorandum in support of Continental's prayer for a declaratory judgment. Continental has also moved for an injunction

---

1. 82 Stat. 146; 15 U.S.C. § 1601 et seq. The interpretation is found in 12 CFR § 226.401.

restraining the defendants from taking any action in reliance on the interpretation. The case is before this Court on cross Motions for Summary Judgment.

█ As a threshold consideration this Court holds that it has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Administrative Procedure Act, 5 U.S.C. § 704, to examine the narrow issue of whether or not Interpretation § 226.401 is an interpretative rule, as the government claims, or is a substantive legislative rule, as the plaintiff contends. Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); City of Chicago v. United States, 396 U.S. 162, 90 S.Ct. 309, 24 L.Ed.2d 340 (1969).

Under Section 105 of the Act, 15 U.S. C. § 1604, the Board is authorized to prescribe regulations to implement the Act's provisions. Section 108, 15 U.S.C. § 1607, places general enforcement authority in the Commission. In accordance with its authority the Board issued Federal Reserve Regulation Z, 12 CFR Par. 226, a comprehensive set of regulations governing transactions within the scope of the Act. Regulation Z became effective on July 1, 1969, the date the Act became operative.

Section 105 also allows the Board to make "exceptions for any class of transactions, as in the judgment of the Board are necessary or proper to effectuate the purposes of [the Act]." Accordingly, the Board in Regulation Z, section 226.-4(c), 12 CFR § 226.4(c), provided, "A late payment, delinquency, default, reinstatement, or other such charge is not a finance charge if imposed for *actual unanticipated* late payment, delinquency, default, or other such occurrence." (Emphasis added).

On April 22, 1969 the Board issued Interpretation § 226.401 to Section 226.-4(c) of Regulation Z. The interpretation was promulgated on May 10, 1969 and published in 34 Fed.Reg. 7571. This interpretation, 12 CFR § 226.401, reads:

"Some vendors bill their customers for property or services purchased under the terms of a credit plan which requires that the full amount of each billing be paid within a stipulated period after billing, with no privilege of paying in instalments. If a bill is not paid within that stipulated period of time, the vendor imposes a service charge periodically on the unpaid balance until the account is paid in full. The question arises as to whether Regulation Z applies to such transactions.

"When in the ordinary course of business a vendor's billings are not paid in full within that stipulated period of time, and under such circumstances the vendor does not, in fact, regard such accounts in default, but continues or will continue to extend credit and imposes charges periodically for delaying payment of such accounts from time to time until paid, the charge so imposed comes within the definitions of a 'finance charge' (§ 226.2(q)) applicable in each case to the amount of the unpaid balance of the account. Under such circumstances the credit so extended comes within the definition of 'open end credit' in § 226.2(r), the vendor is a creditor as defined in § 226.2(m), and the disclosures required for open end credit accounts under § 226.7 shall be made."

The interpretation thus sets forth three criteria for determining when a "late payment" charge must be considered a "finance" charge. If (1) in the ordinary course of business the creditor's billings are not paid within the stipulated time and yet the creditor does not regard the accounts as being in default, (2) the creditor continues to extend credit, and (3) the creditor imposes periodic late charges from time to time until the bill is paid, then the "late payment" charge is considered to be a "finance" charge and not an "actual unanticipated late payment" charge.

Section 4 of the Administrative Procedure Act, 5 U.S.C. § 553, requires that rule making by an agency be preceded by "[g]eneral notice of proposed rule making" in the Federal Register at least

thirty days before the effective date of the proposed rule, and further requires that the agency afford interested persons "an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." Exempt from the general requirements of notice and opportunity for comment are "interpretative rules." 5 U.S.C. § 553(b) (A).

Plaintiff and *amicus* claim that Interpretation § 226.401 is not merely an interpretative rule, but is in fact a substantive regulation and, as such, is invalid because the Board failed to give prior notice and opportunity for comment as required by Section 4 of the Administrative Procedure Act, 5 U.S.C. § 553. Plaintiff Continental further contends that because of the unexpected adoption of this interpretation, it is threatened with enforcement action by the Commission and the possibility of large civil liability as a result of a number of class actions filed by its customers. The government contends that Interpretation § 226.401 is an interpretative rule, not a substantive regulation, and thus is excluded from the requirements of the Administrative Procedure Act's notice and opportunity for comment provisions.

[2, 3] A great distinction exists between interpretative rules and substantive regulations issued by administrative agencies, especially in the formalities necessary for issuance and in the legal impact accorded them. An administrative interpretation or interpretative rule is a clarification or explanation of existing laws or regulations rather than a substantive modification in or adoption of new regulations. Substantive legislative rules and regulations "create law * * * whereas interpretative rules are statements as to what the administrative officer thinks the statute or regulation means." Gibson Wine Co. v.

Snyder, 194 F.2d 329, 331 (D.C.Cir. 1952). See also 1 K. Davis, Administrative Law Treatise § 5.01 et seq.

■ The Federal Reserve Board and its vice chairman have characterized Interpretation § 226.401 as an "interpretative rule." [2] However, both the United States Supreme Court and this Court have rejected the argument that the label given to a rule by an administrative agency is determinative. Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942); Pharmaceutical Manufacturers Association v. Finch, 307 F.Supp. 858 (D.Del.1970).

As this Court pointed out in Pharmaceutical Manufacturers Association v. Finch, *supra*, the determination that a rule or regulation is subject to the notice and comment provisions of Section 4 of the Administrative Procedure Act should be based upon the basic purpose of the statutory requirements rather than upon facile semantic distinctions. "The basic policy of Section 4 at least requires that when a proposed regulation of general applicability has a substantial impact on the regulated industry, * * * notice and opportunity for comment should first be provided." 307 F.Supp. at 863. In determining that the regulations had such "substantial impact" that it would violate the basic policies of the Administrative Procedure Act not to allow notice and the opportunity for comment prior to promulgation, this Court in the *PMA* case weighed (1) the complexity and pervasiveness of the rules issued, (2) the drastic changes effected in existing law by the rules, (3) the degree of retroactivity and its impact and (4) the confusion and controversy engendered by practical difficulties of compliance with the new rules.

■ This Court is of the opinion that Interpretation § 226.401 is in fact

2. In a letter to Frederick M. Rowe, Esquire, counsel for the American Petroleum Institute, *amicus curiae* in this case, dated April 13, 1970, the Board's vice chairman, J. L. Robertson, said the interpretation "accurately states the opinion of the Board concerning the meaning of terms used in the Regulation."

an interpretative rule and as such was not subject to the notice and opportunity for comment provisions of Section 4 of the Administrative Procedure Act. The interpretation is not a complex and all pervasive set of regulatory matter. Instead it merely represents an attempt to clarify or define what is meant and what is not meant by the term "actual unanticipated late payment" charge.[3] Expressing an agency's view of the definition of a term used in a statute or regulation is uniformly held to be interpretative. United States v. 353 Cases, Etc., 247 F.2d 473 (8th Cir. 1957).

Interpretation § 226.401 did not effect a drastic change in the existing law. Section 226.4 of Regulation Z describes the finance charge as "the sum of *all charges*, payable directly *or indirectly* by the customer, and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit." (Emphasis added). Included are any "[s]ervice, transaction, activity, or carrying charge." A late payment charge is excluded only "if imposed for *actual unanticipated* late payment" (Emphasis added). The explanation of exactly what charges are excludible under the exception of Section 226.4(c) of Regulation Z in no way altered prior law since its issuance on April 22, 1969 and

its publication on May 10, 1969 occurred prior to July 1, 1969, the effective date of the Truth in Lending Act and Regulation Z. There was no retroactive effect to the interpretation.

The Court is thus left with the contention of the plaintiff and *amicus* that this interpretation has caused confusion and controversy and presented difficulties in their compliance with it. Interpretation § 226.401, however, was issued to clear up confusion and controversy which had developed from Section 226.-4(c) of Regulation Z. The three criteria set forth by Interpretation § 226.401 do not appear to the Court to be confusing or controversial. No reason has been advanced why compliance with the disclosure provisions of Sections 226.6 and 226.7 of Regulation Z [4] would be any more onerous to the plaintiff than to other creditors required to make the necessary disclosures.

The plaintiff has called the Court's attention to a proposed amendment to Regulation Z, section 226.4(c) which purportedly would embody the content of Interpretation § 226.401.[5] The proposal, issued by the Board for comment on April 13, 1970, has never been adopted.

The plaintiff contends that this proposal demonstrates that Interpretation §

---

3. Since the word "unanticipated" means "not foreseen or expected," it would appear that an "actual unanticipated late payment" charge would be the antithesis of a charge stemming from a course of conduct where credit is continued even though payments are repeatedly late and late payment charges are periodically imposed.

4. General disclosure requirements are set forth in 12 CFR § 226.6 and disclosure requirements for "open end credit" are set forth in 12 CFR § 226.7. No party has alleged that plaintiff's credit plan would be classified as "credit other than open end."

5. The proposed amendment would change Section 226.4(c) of Regulation Z to read as follows:

"§ 226.4 *Determination of Finance Charge.*

\*     \*     \*     \*     \*

(c) *Late payment, delinquency, default, and reinstatement charges.* A late payment, delinquency, default, reinstatement, or other such charge is not a finance charge if imposed for actual unanticipated late payment, delinquency, default, or other such occurrence. However, where such charge is imposed on an account which is or may be debited from time to time for purchases or other obligations and, under its terms, payment in full or of a specified amount is required when billed, and in the ordinary course of business the obligor is permitted to continue to have purchases or other obligations debited to the account after the imposition of such charge, such charge is a finance charge instead of a late payment or other such charge, and the disclosures required under § 226.7 shall be made." 35 Fed.Reg. 6328.

226.401 was actually a substantive rule and not merely an interpretation. However, the proposed amendment sets forth only one criterion for including late payment charges in the calculation of finance charges, namely that the creditor continue to extend credit after a late charge is incurred. The proposed amendment would thus narrow the existing exception. It is significantly more narrow than the three criteria test set forth in Interpretation § 226.401 for determining an "unanticipated late payment" charge. Thus, the fact that the Board followed the provisions relating to notice and opportunity for comment of Section 4 of the Administrative Procedure Act in proposing this amendment is not relevant to the determination of the issue in the present case.

The plaintiff has called the attention of the Court to a letter written to the Board in response to the proposed amendment by Sheldon Feldman, the Acting Chief of the Commission's Division of Consumer Credit, in which the Commission staff expressed its objections to the proposed amendment.[6] The

6. The letter, in part, reads as follows:

"FEDERAL TRADE COMMISSION

Washington, D. C. 20580

Bureau of Deceptive Practices

MAY 20 1970

The Board of Governors of the
    Federal Reserve System
20th and Constitution Avenue, N.W.,
Washington, D. C. 20551

Dear Sirs:

On April 13, 1970, the Board of Governors of the Federal Reserve System issued for comment a proposal to amend Section 226.4(c) of Regulation Z to specifically include the substance of an interpretation issued April 22, 1969, relating to the manner in which creditors should treat the disclosures of charges which are allegedly 'late payment charges' imposed on '30-day' and open end accounts. The proposed amendment to Section 226.4(c) of Regulation Z indicates a late payment or other similar charge will be considered a finance charge when, in the *ordinary course of business, the customer is permitted to continue using his credit account *after* the late payment or other charge has been imposed.

It is the opinion of the staff of the Division of Consumer Credit that this severe limitation on the definiton of a bona-fide, unanticipated late payment or other similar charge is not in the best interest of the public.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

We believe that an amendment or interpretation which forces creditors to choose between [certain undesirable alternatives] simply because they impose a late charge once and continue to extend additional credit to the customer is unreasonable. Any such requirement ignores the reality that it may sometimes be inconvenient for a customer to pay all of his accounts in a particular month and therefore he may miss a payment, fully intending to continue to use his account and to bring his payments back to a current status following receipt of the next periodic billing statement. It seems that the imposition of a late payment charge under these conditions would not be sufficient to bring the creditor within the scope of open end credit.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

We do agree, however, that creditors who purportedly offer '30-day accounts' but who repeatedly impose a 'late payment charge' and do not take steps to collect such accounts while allowing their customers to incur further debt should not be permitted to avoid making the open end disclosures. Under these facts, we believe that both the creditor and the customer have indicated their election to treat the credit arrangement as an open end account and that failure to require the appropriate disclosures results in evasion or circumvention of Regulation Z.

plaintiff charges that this demonstrates the Commission's belief that Interpretation § 226.401 went beyond the existing Regulation Z. However, the letter was in response to the proposed amendment, not the interpretation, and was critical of the use of the amendment's one criterion as the sole criterion. The letter did not concern itself with the interpretation. A careful reading of Mr. Feldman's letter reveals that the Commission staff believed that it was too drastic to require cutting off credit immediately after the first imposition of a one-time late charge in order to avoid having the charge denominated a finance charge. But Mr. Feldman's letter stated that the Commission staff agreed that creditors "who repeatedly impose a 'late payment charge' and do not take steps to collect such accounts while allowing their customers to incur further debt should not be permitted to avoid making the open end disclosures." Thus, the Court finds no support for plaintiff's contentions in the Commission's letter to the Board. The Court concludes that Interpretation § 226.401 is an interpretative rule and not a substantive legislative rule and thus was not subject to the notice and opportunity for comment provisions of Section 4 of the Administrative Procedure Act.

■ Upon the present record the Court is unable to determine the substantive propriety of Interpretation § 226.401, as applied to the plaintiff. Because of the plaintiff's insistence that the Court attempt to adjudicate this question without having in the record facts pertaining to the actual operation of Continental's credit card plan, the Court cannot ascertain whether the plaintiff's plan meets none, some, or all three of the criteria set forth in the interpretation. This issue is thus not ripe for review under the standards set forth in Toilet Goods Association v. Gardner, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967).

■ Further, there appears to be no hardship to the plaintiff in denying injunctive relief in this case. While it is true that an administrative interpretation is usually held valid "unless it is plainly erroneous or inconsistent with the regulation," Bowles v. Seminole Rock Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); Brooks v. Standard Oil Co., 308 F.Supp. 810, 813 (S.D.N.Y.1969), and that "wide latitude is given the agency in the interpretation of * * * regulations," Beeline Express, Inc. v. United States, 308 F. Supp. 721, 726 (D.Colo.1970), aff'd per curiam 398 U.S. 955, 90 S.Ct. 2170, 26 L.Ed.2d 539 (1970), an interpretative rule is not binding upon courts. United States v. Dickson, 15 Pet. (40 U.S.) 141, 10 L.Ed. 689 (1841); O'Neill v. United States, 281 F.Supp. 359 (N.D.Ohio 1968), aff'd 410 F.2d 888 (6th Cir. 1969). In American President Lines Ltd. v. Federal Maritime Commission, 114 U.S.App.D.C. 418, 316 F.2d 419 (D. C.Cir.1963) then Circuit Judge Burger

* * * * * * * * * * * *

In summary, we believe the proposed amendment is too restrictive and that the position set out in this letter is reasonable both in terms of protecting the public interest and of recognizing that many creditors neither wish, nor are able, to extend open end credit. Therefore, we ask that the Board of Governors reconsider the proposed amendment to Section 226.4(c) of Regulation Z which was released for comment on April 13, 1970.

Because of the time limitation for submitting responses and the technical nature of the issue, the views expressed in this letter are those of the staff of the Division of Consumer Credit and are not intended to represent the opinion of the Commission, to which these comments have not been submitted.

Sincerely,

/s/ Sheldon Feldman

Sheldon Feldman
Acting Chief,
Division of Consumer Credit."

dealt with an interpretation of Section 14b of the Shipping Act. He stated,

"Whatever practical or psychological effect this rule may have on the conduct of petitioners,—and we do not doubt that it may have some pragmatic consequences—its legal effect is essentially that of an opinion of the legal staff. Neither the affected parties nor the courts are bound by it unless they elect to adopt it as a correct interpretation of the statute." 316 F.2d at 422.

The propriety of this interpretation can be settled when the issue is presented in a proper case upon an adequate record.

For the reasons herein stated the plaintiff's motion for a summary judgment will be denied and the defendant's motion for a summary judgment will be granted.

An order in accordance with this opinion will be entered.