United States Court of Appeals,

Fifth Circuit.

No. 93-1377.

PHILLIPS PETROLEUM COMPANY, Plaintiff-Appellant,

v.

Gary JOHNSON, Area Manager, Dallas Area Compliance Office,
Minerals Management Service, et al., Defendants-Appellees.

ATLANTIC RICHFIELD COMPANY, Plaintiff-Appellant,

v.

Bruce BABBITT, Secretary of Department of Interior, et al.,
Defendants-Appellees.

PHILLIPS PETROLEUM COMPANY, Plaintiff-Appellant,

v.

Gary JOHNSON, Area Manager, Dallas Area Compliance Office,
Minerals Management Service, et al., Defendants-Appellees.

PHILLIPS PETROLEUM COMPANY, Plaintiff-Appellant,

v.

Gary JOHNSON, Area Manager, Dallas Area Compliance Office,
Minerals Management Service, et al., Defendants-Appellees.

June 10, 1994.

Appeals from the United States District Court for the Northern
District of Texas.

Before SMITH and BARKSDALE, Circuit Judges, WALTER,[*] District
Judge.

JERRY E. SMITH, Circuit Judge:

In this consolidated appeal, plaintiffs Phillips Petroleum

Company ("Phillips") and Atlantic Richfield Company ("Arco") appeal

_____

[*]District Judge of the Western District of Louisiana,
sitting by designation.

1

a summary judgment. Phillips and Arco contend that (1) the six-year limitations period of 28 U.S.C. § 2415(a) barred the administrative order issued by Minerals Management Service ("MMS") of the Department of Interior ("DOI") requiring the recalculation and payment of additional oil and gas royalties based upon an unpublished MMS royalty-valuation procedure (the "Procedure Paper"); (2) defendants failed properly to initiate an audit pursuant to the Federal Oil and Gas Royalty Management Act ("FOGRMA"), 30 U.S.C. §§ 1701-1757; and (3) MMS promulgated the Procedure Paper without notice and comment required under the Administrative Procedure Act of 1982 ("APA"), 5 U.S.C. §§ 552, 553. Phillips further asserts that defendants failed to comply with the Paperwork Reduction Act, 44 U.S.C. §§ 3501-3520. Concluding that MMS promulgated a substantive rule without notice and comment, we reverse.

I.

A.

DOI is responsible for issuing and administering oil and gas leases for federal lands. 30 U.S.C. §§ 181, 223-237. FOGRMA directs the Secretary of Interior (the "Secretary") to establish "a comprehensive inspection, collection and fiscal and production accounting and auditing system to provide the capability to accurately determine oil and gas royalties, interest, fines, penalties, fees, deposits, and other payments owed, and to collect and account for such amounts in a timely manner." 30 U.S.C. § 1711(a). FOGRMA further provides that the Secretary "shall audit

2

and reconcile, to the extent practicable, all current and past lease accounts for leases of oil or gas and take appropriate actions to make additional collections or refunds as warranted, ... [and] may also audit accounts and records of selected lessees and operators."  *Id.* § 1711(c)(1).  MMS is the agency within the DOI that is responsible for auditing royalty payments on federal and Indian oil and gas leases.

Phillips and Arco hold numerous leases on federal and offshore lands.  As lessees, they pay royalties to the government based upon the value of the production saved, removed, or sold from the leased premises.  Up until March 1, 1988, DOI considered several factors in determining the value of federal offshore production for royalty purposes:

> The value of production shall never be less than fair market value.  The value used in the computation of royalty shall be determined by the Director.  In establishing the value, the Director shall consider:  (a) The highest price paid for a part or for a majority of like-quality products produced from the field or area;  (b) the price received by the lessee;  (c) posted prices;  (d) regulated prices;  and (e) other relevant matters. Under no circumstances shall the value of production be less than the gross proceeds accruing to the lessee from the disposition of the produced substances or less than the value computed on the reasonable unit value established by the Secretary.

30 C.F.R. § 206.150 (1987).

On December 14, 1984, MMS developed new criteria for valuing natural gas liquid products ("NGLP's"),[1] as set forth in an

---

[1]When natural gas is produced that contains a high volume of liquefiable hydrocarbons (commonly known as "wet" gas), the gas is sometimes processed to separate the liquids from the dry methane, or "residue," gas.  The liquids are then fractionated to separate the NGLP's, such as ethane, propane, butane, and natural gasoline.

unpublished internal agency paper referred to as the "Procedure Paper."  Instead of considering the range of the various types of prices prescribed in the governing regulation, the Procedure Paper focused entirely upon one type of price, the spot market price:

> MMS will take the highest and lowest published price for the month from the appropriate [spot market price] bulletin.  If the reported price [by the lessee] falls within this range, the [lessee's] value will normally be accepted by MMS for royalty determination purposes....
>
> ....
>
> If the prices used to calculate royalties fall below this range, a minimum value that is acceptable to MMS can be determined by developing an average value from the lowest and highest prices in the range.

In a September 6, 1989, order, MMS advised Arco that it had audited royalty payments under five of Arco's federal offshore leases for the month of September 1983.  MMS directed Arco to recalculate its royalties under the five leases, using the Procedure Paper, for the period 1983-1989.  In a September 7, 1989, order, MMS required Arco to recalculate and pay additional royalties for all federal offshore leases from 1983 to 1989.  MMS sent Arco another order on September 29, 1989, requiring Arco to recalculate its royalties using the Procedure Paper for all federal offshore leases for a period from October 1980 to February 1988.  MMS sent similar orders to Phillips in September 1989, requiring Phillips to recalculate and pay additional royalties, using the Procedure Paper, on all offshore leases between January 1977 and February 1988.

### B.

Phillips filed three separate suits for declaratory and

injunctive relief, disputing the validity of the MMS orders;  at about the same time, Arco filed a similar action in the same court. The four cases were consolidated, and the parties filed cross-motions for summary judgment.  The district court allowed the government to file a counterclaim seeking judicial enforcement of the orders, concluding that the statute of limitations provision of 28 U.S.C. § 2415(a) did not apply to the contested orders, and granted summary judgment on the government's counterclaim.

## II.

The Procedure Paper is a "rule," and its promulgation constituted "rulemaking" within the meaning of the APA.[2]  Section 553 of the APA provides that an agency must provide notice of a proposed rule in the *Federal Register* and afford an opportunity for interested persons to present their views.  5 U.S.C. § 553(b), (c). The required publication must be made not less than thirty days before the effective date of the proposed rule.  *Id.* § 553(d).  In promulgating the Procedure Paper, MMS did not attempt to comport with these requirements, as it argues that the requirements of § 553 do not apply to the APA.

The APA exempts "interpretative rules, general statements of

---

[2]Title 5 U.S.C. § 551(4) defines a "rule" as "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes [various substantive agency functions] or practices bearing on any of the foregoing." Section 551(5) defines "rulemaking" as "agency process for formulating, amending, or repealing a rule."  Indeed, MMS does not argue that its action was not rulemaking but only that the Procedure Paper was exempt from the APA's notice and comment provisions.

policy, [and] rules of agency organization, procedure, or practice" from the notice and comment requirements. *Id.* § 553(b)(A). In the Procedure Paper itself, MMS attempted to avoid the notice and comment requirements of the APA by characterizing the rule as a "yardstick." The Interior Board of Land Appeals called the rule "essentially a policy guideline." *Conoco & ARCO Oil & Gas Co.,* 110 IBLA 232, 242-43 (1989). This court, however, must determine the category into which the rule falls: "[T]he label that the particular agency puts upon its given exercise of administrative power is not, for our purposes, conclusive; rather it is what the agency does in fact." *Brown Express, Inc. v. United States,* 607 F.2d 695, 700 (5th Cir.1979) (quoting *Lewis-Mota v. Secretary of Labor,* 469 F.2d 478, 481 (2d Cir.1972)). We review this legal issue *de novo. See Munn v. Algee,* 924 F.2d 568, 575 (5th Cir.), *cert. denied,* --- U.S. ----, 112 S.Ct. 277, 116 L.Ed.2d 229 (1991).

## A.

MMS argues that the Procedure Paper merely interprets the existing royalty valuation regulation in the context of NGLP's used internally and not sold. It is therefore a clarification or explanation of existing laws and regulations rather than a substantive modification of existing regulations or adoption of new ones. *See Continental Oil Co. v. Burns,* 317 F.Supp. 194, 197 (D.Del.1970). Consequently, MMS concludes, the Procedure Paper is exempt from the notice and comment requirements as an "interpretative rule."

"Interpretative rules" have been defined by this court in

6

*Brown Express:* "Generally speaking, it seems to be established that "regulations,' "substantive rules,' or "legislative rules' are those which create law, usually implementary to an existing law; whereas interpretative rules are statements as to what the administrative officer thinks the statute or regulation means." *Brown Express,* 607 F.2d at 700 (quoting *Gibson Wine Co. v. Snyder,* 194 F.2d 329, 331 (D.C.Cir.1952)). The Procedure Paper is not an interpretative rule, as it does not purport to interpret a statute or regulation. Notwithstanding MMS's assertion that the Procedure Paper merely announced the approach MMS would take in interpreting and applying 30 C.F.R. § 206.150, the Procedure Paper is not a mere clarification. It defines no ambiguous term. It gives no officer's opinion about the meaning of the statute or regulations. Rather, it effects a change in the method used by MMS in valuing NGLPs.[3] As such, it is a new rule and cannot be interpretative. *Brown Express,* 607 F.2d at 700.

B.

MMS also contends that the Procedure Paper may be characterized as a "general statement of MMS policy." A general statement of policy is a statement by an administrative agency announcing motivating factors the agency will consider, or

---

[3]MMS claims that the Procedure Paper effects no change because MMS could have used spot market prices to value NGLP's not sold. Under 30 C.F.R. § 206.150, "posted prices" are but one factor to be used in valuing NGLP royalties. And rules are viewed as substantive when they "constrict the discretion of agency officials by largely determining the issue addressed." *Batterton v. Marshall,* 648 F.2d 694, 702 (D.C.Cir.1980) (footnote omitted).

tentative goals toward which it will aim, in determining the resolution of a substantive question of regulation. *Id.* at 701.

> A general statement of policy ... is merely an announcement to the public of the policy which the agency hopes to implement in future rulemakings or adjudications. A general statement of policy, like a press release, presages an upcoming rulemaking or announces the course which the agency intends to follow in future adjudications.

*Id.* (quoting *Pacific Gas & Elec. Co. v. FPC,* 506 F.2d 33, 38 (D.C.Cir.1974)). The Procedure Paper, however, does none of these things. It does not set a goal that future proceedings may achieve, for the change has already been made. Immediately upon its effective date, the five-factor valuation technique of 30 C.F.R. § 206.150 was no longer to be followed. An announcement stating a change in the method by which an agency will value NGLP's is not a "general statement of policy." Thus, the Procedure Paper is not exempt from APA requirements as a "general statement of policy."

### C.

Section 553(b)(A) also exempts "rules of agency organization, procedure, or practice." Although the Procedure Paper would appear to fall squarely within this exemption, for the change effected by the Procedure Paper plainly relates to the internal practices of MMS, the mere fact that it may guide MMS procedures does not mean that the Procedure Paper is a "procedural" rule for purposes of the APA.

The Supreme Court has stated that the notice and comment provisions "were designed to assure fairness and mature consideration of rules of general application." *NLRB v. Wyman-*

8

*Gordon Co.,* 394 U.S. 759, 764, 89 S.Ct. 1426, 1429, 22 L.Ed.2d 709 (1969). These provisions afford an opportunity for "the agency promulgating the rule to educate itself before establishing rules and procedures which have a substantial impact on those regulated." *Texaco, Inc. v. Federal Power Comm'n,* 412 F.2d 740, 744 (3d Cir.1969). Congress realized that an agency's judgment would be only as good as the information upon which it drew. It prescribed these procedures to ensure that the broadest base of information would be provided to the agency by those most interested and perhaps best informed on the subject of the rulemaking at hand. *See Shell Oil Co. v. Federal Energy Admin.,* 574 F.2d 512, 516 (Temp.Emer.Ct.App.1978).

The proper test to be applied in considering a rule that may arguably fall under the exemptions for "procedural rules" is as stated by *Brown Express:* "[W]hen a proposed regulation of general applicability has a *substantial* impact on the regulated industry, or an important class of the members or the products of that industry, notice and opportunity for comment should first be provided." *Brown Express,* 607 F.2d at 702 (citation omitted). The exemption of § 553(b)(A) from the duty to provide notice by publication does not extend to those procedural rules that depart from existing practice and have a substantial impact on those regulated. Our inquiry, therefore, is not whether the rule is "substantive" or "procedural," but rather whether the rule will have a "substantial impact" on those regulated.

We conclude that the Procedure Paper does have a substantial

9

impact on those regulated in the industry.  The rule narrowly restricts the discretion of MMS officials in determining the value of NGLP's.  It forecloses other valuation methods by prescribing binding valuation criteria.  Although the regulation allows the use of *posted* prices in determining the value of NGLP's, the Procedure Paper mandates the use of *spot* prices.[4]  Thus, the Procedure Paper does not even comport with the regulation in using posted prices.  Moreover, the Procedure Paper eliminates the other four factors in determining the value of NGLP's.

This change in valuation technique dramatically affects the royalty values of all oil and gas leases.  Thus, the Procedure Paper should have been published in the *Federal Register* and offered for notice and comment.  A party may not be adversely affected by a rule promulgated in violation of these requirements. 5 U.S.C. § 552(a)(1).

### III.

We conclude that the Procedure Paper is a substantive rule, and § 553 of the APA controlled its promulgation.  We therefore REVERSE the summary judgment and REMAND for such further proceedings as may be necessary.

---

[4]A posted price is a publicly announced price at which a purchaser is willing to buy a certain type and amount of petroleum products.  Spot prices, on the other hand, reflect actual transactions on a short-term or one-time basis.