509 F.2d 29
 AMERICAN BANCORPORATION, INC., et al., Petitioners,
v.
The BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent,
and
Northwest Bancorporation, Intervenor-Respondent.
SPRINGSTED INCORPORATED et al., Petitioners,
v.
The BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent,
and
Northwest Bancorporation, Intervenor-Respondent.
 Nos. 73--1637, 73--1643.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 13, 1974.
Decided Dec. 30, 1974.
 
 Richard H. Kyle, St. Paul, Minn., for petitioners.
 Donald Etra, Atty., Dept. of Justice, Washington, D.C., for respondents.
 Before GIBSON, BRIGHT and WEBSTER, Circuit Judges.
 BRIGHT, Circuit Judge.
 
 
 1
 Northwest Bancorporation (Banco), a bank holding company, sought and obtained permission of the Board of Governors of the Federal Reserve System (Board) to purchase all of the voting shares of T. G. Evensen & Associates (Evensen), a close corporation that provides financial advice, primarily in bonding matters, to state and local governments in Minnesota, Iowa, Wisconsin, North and South Dakota, and Nebraska. Banco intends to expand the state and municipal finance consulting business of Evensen as its subsidiary. Competitors of Evensen and banking organizations in direct competition with Banco opposed the Board's approval of the acquisition, and, as petitioners,[1] they now seek our review and reversal of the order of the Board here in question. Our power of review rests on 12 U.S.C. § 1848 (1970), which specifically authorizes any party aggrieved by an order of the Board to obtain review in the appropriate United States Court of Appeals.
 
 The petitioners make the following claims:
 
 2
 1) During consideration of Banco's application, the Board, without complying with legal requirements, amended its regulation relating to acquisitions by bank holding companies of companies engaged in nonbanking activities, 12 C.F.R. § 225.4(a), to expressly include the activity of advising state and local governments in financial matters; and the Board relied in part on this amendment to justify the order now in question.
 
 
 3
 2) The Board unlawfully denied the opponents of Banco's proposed acquisition, the petitioners herein, a formal trial-type hearing authorized and required pursuant to law and applicable regulations.
 
 
 4
 3) The Board's decision on the merits constituted error because it was based upon an incomplete record developed without the benefit of a full evidentiary hearing.
 
 
 5
 To place these issues in a proper frame of reference, we recount the proceedings leading up to the Board's approval of the Evensen acquisition.
 
 
 6
 Banco filed its application with the Board, by way of the Federal Reserve Bank of Minneapolis, on February 22, 1972, seeking permission to acquire all the voting shares of Evensen pursuant to § 4(c)(8) of the Bank Holding Company Act, 12 U.S.C. § 1843(c)(8) (1970). That Act, as material here, prohibits a bank holding company from acquiring any interest in nonbanking organizations other than an interest in a company the activities of which the Board, after due notice and opportunity for hearing, has determined 'to be so closely related to banking or managing or controlling banks as to be a proper incident thereof.'[2] After a routine investigation, the Federal Reserve Bank of Minneapolis recommended that the Board approve Banco's application.
 
 
 7
 Notice of the filing of Banco's application was published in the Federal Register[3] on March 21, 1972, the day following recommendation of approval by the Federal Reserve Bank of Minneapolis. The published notice invited interested persons to submit their views, to comment upon the appropriateness of the proposed acquisition, and, if requesting a hearing, to submit reasons justifying any hearing.
 
 
 8
 Banco filed its application pursuant to the then existing regulation of the Board which defined the following activities, among others, as so closely related to banking or managing or controlling banks as to be a proper incident thereto:
 
 
 9
 (5) Acting as investment or financial adviser, including (i) serving as the advisory company for a mortgage or a real estate investment trust, and (ii) furnishing economic or financial information; * * *. (12 C.F.R. § 225.4(a)(5).)
 
 
 10
 During the pendency of the application, and at least partially in response to the application, the Board amended this regulation, effective June 6, 1972, without prior publication of notice. Petitioners charge that failure to publish advance notice of the proposed amendment to the regulation violated § 4 of the Administrative Procedure Act (APA), 5 U.S.C. § 553 (1970).
 
 
 11
 As amended, the Board's regulation as pertinent here now provides:The following activities have been determined by the Board to be so closely related to banking or managing or controlling banks as to be a proper incident thereto:
 
 
 12
 (5) Acting as investment of financial adviser to the extent of (i) serving as the advisory company for a mortgage or a real estate investment trust; (ii) serving as investment adviser, as defined in section 2(a)(20) of the Investment Company Act of 1940, to aninvestment company registered under that Act; (iii) providing portfolio investment advice to any other person; (iv) furnishing general economic information and advice, general economic statistical forecasting services and industry studies, and (v) providing financial advice to State and local governments, such as with respect to the issuance of their securities; * * *. (12 C.F.R. § 225.4(a)(5) (emphasis added, footnotes omitted).)
 
 
 13
 The Board forwarded a copy of the amended regulation to attorneys for the petitioners, advising them:
 
 
 14
 This new language is not intended to be in any way an expression of the Board's views on the application of Northwest Bancorporation ('Northwest') to acquire T. G. Evensen & Associates, Inc. ('Evensen'). The Board must still consider whether the performance of Evensen's activities as an affiliate of Northwest 'can reasonably be expected to produce benefits to the public, such as greater convenience, increased competition, or gains in efficiency, that outweigh possible adverse effects, such as undue concentration of resources, decreased or unfair competition, conflicts of interests, or unsound banking practices.'
 
 
 15
 Any additional comments you may wish to make in light of the amendment to section 225.4(a)(5) should be submitted as soon as possible.
 
 
 16
 The Board denied the petitioners' demand for a formal, trial-type hearing on Banco's application to acquire Evensen. Instead, it granted them the right to submit evidence at an oral presentation on the propriety of the acquisition under the standards set forth in § 4(c)(8) of the Bank Holding Company Act.[4]
 
 
 17
 Following the oral presentation, held on October 17, 1972, in Minneapolis, the Federal Reserve Bank of Minneapolis revised its earlier recommendation of approval of the application and advised the Board that it (Federal Reserve Bank of Minneapolis) 'is now of the opinion that the application should be denied.' Thereafter, the Board, with one dissent,[5] issued an order, effective August 16, 1973, approving the acquisition of Evensen by Banco, subject to certain conditions.[6] With this background in mind, we turn to the procedural issues raised by petitioners.
 
 
 18
 I. Amendment of the Regulation.
 
 
 19
 Section 4(b) of the APA provides that rulemaking by an agency requires advance publication of notice in the Federal Register. Notice must include a statement of the time, place, and nature of the rulemaking proceeding, reference to legal authority under which the rule is proposed, and an explanation of the terms or substance of the proposed rule or a description of the subjects and issues involved. 5 U.S.C. § 553(b). The statute exempts from the notice requirement 'interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice,' 5 U.S.C. § 553(b)(A), or rules for which the agency finds that notice and public procedure are impracticable, unnecessary, or contrary to the public interest, 5 U.S.C. § 553(b)(B). These exceptions do not apply when the statute under which the agency is proceeding itself requires notice or hearing for rulemaking.[7]
 
 
 20
 The petitioners contend that the amendment of June 6, 1972, in the Board's regulation defining permissible nonbanking activities, 12 C.F.R. § 225.4(a)(5), constituted, as it affected the proposed acquisition of Evensen, a substantive change, necessitating compliance with the notice requirements of § 4(b) of the APA. The Board, however, contends that the amendment was interpretative only, falling within the provision for exemption from notice of § 4(b)(A) of the APA, 5 U.S.C. § 553(b)(A). To determine whether the amendment was substantive or interpretative, we must focus upon its impact on the banking industry regulated by the Board. See Shell Oil Co. v. FPC, 491 F.2d 82, 87--88 (5th Cir. 1974); National Ass'n of Ins. Agents v. Board of Governors, 489 F.2d 1268, 1270 (D.C. Cir. 1974); Akron, Canton & Youngstown R.R. v. United States, 370 F.Supp. 1231, 1236--1240 (D.Md.1974) (three-judge court); Commonwealth of Pennsylvania v. United States, 361 F.Supp. 208, 220--222 (M.D.Pa.) (three-judge court), aff'd mem., 414 U.S. 1017, 94 S.Ct. 440, 38 L.Ed.2d 310 (1973); National Motor Freight Traffic Ass'n v. United States, 268 F.Supp. 90, 96 (D.D.C.1967) (three-judge court), aff'd per curiam, 393 U.S. 18, 89 S.Ct. 49, 21 L.Ed.2d 19 (1968); Continental Oil Co. v. Burns, 317 F.Supp. 194, 197--200 (D.Del.1970). Whether the change in the regulation is substantive or interpretative may be ascertained in part by reference to the following criteria:
 
 
 21
 (1) the complexity and pervasiveness of the rules issued, (2) the drastic changes effected in existing law by the rules, (3) the degree of retroactivity and its impact and (4) the confusion and controversy engendered by practical difficulties of compliance with the new rules. (Continental Oil Co. v. Burns, supra, 317 F.Supp. at 197.)
 
 
 22
 The Board has explained its amendment of the regulation in a supplement to the record.[8] The regulation, as originally promulgated on June 15, 1971, encouraged the banking industry, by its use of the open-ended term 'including,' to interpret broadly the phrase 'acting as investment or financial advisor.' As a consequence, holding companies were applying to the Board for authorization to engage in various outside activities, some of which were only remotely related to banking. Under this language, the Board entertained applications for the acquisition of firms engaged in, among other pursuits, management and syndication of real estate, advising issuers of state and municipal securities (the instant case), buying and selling securities for management investment portfolios, and providing estate planning services to individuals. For some time prior to its change of this language, the Board had considered other means of modifying the regulation to limit its scope and, thus, its interpretation by the industry.
 
 
 23
 In modifying the regulation, the Board replaced the word 'including' with the phrase 'to the extent of' and enumerated five permissible activities within the range of acting as an investment or financial adviser:
 
 
 24
 (5) Acting as investment or financial adviser to the extent of (i) serving as the advisory company for a mortgage or a real estate investment trust; (ii) serving as investment adviser, as defined in section 2(a)(20) of the Investment Company Act of 1940, to an investment company registered under that Act; (iii) providing portfolio investment advice to any other person; (iv) furnishing general economic information and advice, general economic statistical forecasting services and industry studies, and (v) providing financial advice to State and local governments, such as with respect to the issuance of their securities; * * *. (12 C.F.R. § 225.4(a)(5) (emphasis added, footnotes omitted).)
 
 
 25
 In contending that the change is substantive rather than interpretative, the petitioners direct our attention to the hearing and submissions preceding the adoption of the original regulation. They point out the complete absence of any direct discussion of offering financial advice to state and local governments with respect to issuance of their securities in the hearing conducted by the Board and submissions received in connection with adoption of the regulation. The record discloses, however, that adequate, if not abundant, comments and recommendations were submitted by interested parties urging that bank holding companies should be authorized to offer investment advice and information to anyone or to any entity without limitation.
 
 
 26
 Moreover, the Board has represented to this court that its intent in amending the regulation was to restrict the broad scope of activities apparently authorized under the language of the original regulation. We have carefully examined the record, including confidential documents and staff memoranda to the Board, and are satisfied that this representation is accurate. While the precise activity under consideration, that of providing local and state governments with advice about their investment policies, represented a new endeavor and thus a new direction in the activities of bank holding companies, the activity falls squarely within the broad scope of 'acting as investment or financial advisor,' which the Board determined by the original regulation to be so closely related to banking as to be a proper incident thereto within the meaning of § 4(c)(8) of the Bank Holding Company Act. Because the amended regulation expresses the agency's narrowed view of the language of the original regulation and makes explicit what was implicit under that regulation, we hold that the agency's amendment is interpretative and therefore not subject to the notice and hearing requirements of § 4(b) of the APA. See DeRieux v. Five Smiths, Inc., 499 F.2d 1321, 1333--1334 (Em.App.), cert. denied, 419 U.S. 896, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974); Shell Oil Co. v. FPC, Supra, 491 F.2d at 87--88; National Ass'n of Ins. Agents v. Board of Governors, supra, 489 F.2d at 1270; Memphis Light, Gas & Water Division v. FPC, 149 U.S.App.D.C. 238, 462 F.2d 853, 858--860, cert. denied, 409 U.S. 941, 93 S.Ct. 234, 34 L.Ed.2d 192 (1972), & rev'd on other grounds, 411 U.S. 458, 93 S.Ct. 1723, 36 L.Ed.2d 426 (1973); Garelick Mfg. Co. v. Dillon, 114 U.S.App.D.C. 218, 313 F.2d 899, 900 (1963); Gibson Wine Co. v. Snyder, 90 U.S.App.D.C. 135, 194 F.2d 329, 331--332 (1952); Commonwealth of Pennsylvania v. United States, supra, 361 F.Supp. at 220--222; Continental Oil Co. v. Burns, supra, 317 F.Supp. at 197.
 
 
 27
 We note further that we can see no real prejudice to the petitioners caused by this amendment. Petitioners were afforded the opportunity, in common with the rest of the public, to express their respective views on the propriety of the regulation as originally formulated. They declined the opportunity. Notwithstanding their failure to participate at that time, the Board later afforded them, during the pendency of Banco's application, an opportunity to submit their views on the propriety of Banco acquiring Evensen. They then accepted the opportunity and the Board has now heard their views on the wisdom of permitting a bank holding company to acquire a firm engaged in state and local government financial consulting. Accordingly, we reject petitioners' contention on the foregoing issue.
 
 
 28
 II. Whether Petitioners Were Entitled to a Trial-Type Hearing.
 
 
 29
 The Bank Holding Company Act, at § 4(a), 12 U.S.C. § 1843(a), prohibits a bank holding company from acquiring ownership or control of any voting shares of any company which is not a bank, subject to an exception for certain companies, the activities of which the Board
 
 
 30
 after due notice and opportunity for hearing has determined (by order or regulation) to be so closely related to banking or managing or controlling banks as to be a proper incident thereto. (§ 4(c)(8), 12 U.S.C. § 1843(c)(8) (emphasis added).)[9]
 
 
 31
 The hearing provision of § 4(c)(8), as presently worded, represents a substantial change over an earlier version, amended in 1970. Prior to 1970, § 4(a) and (c)(8) of the Bank Holding Company Act prohibited acquisitions of ownership or voting shares in a company other than a bank except for a company all of the activities of which are or will be of a financial, fiduciary, or insurance nature and
 
 
 32
 which the Board after due notice and hearing, and on the basis of the record made at such hearing, by order has determined to be so closely related to the business of banking or of managing or controlling banks as to be a proper incident thereto * * *. (Act of July 1, 1966, Pub.L.No.89--485, § 8(b), 80 Stat. 236, 239 (emphasis added).)
 
 
 33
 Whereas under the pre-1970 language of § 4(c)(8) the Board could act only 'after due notice and hearing, and on the basis of the record made at such hearing,' under the present language the Board may act after 'due notice and opportunity for hearing' and may proceed either by rule or adjudication. Thus, the 1970 amendment eliminated the requirement of a hearing in all cases in which a bank holding company seeks to acquire an interest in a nonbanking concern. Instead of conducting a hearing in every such case, the Board may now proceed by regulation in some or most cases, just as it did with respect to defining permissible nonbanking functions, as discussed in part I of this opinion. See Bank America Corp. v. Board of Governors, 491 F.2d 985, 987 (9th Cir. 1974).
 
 
 34
 The Board has adopted a rule of procedure governing applications to acquire an established nonbanking concern. The rule recites that the Board
 
 
 35
 will give interested persons an opportunity to express their views (including, where appropriate, by means of a hearing) on the question whether performance of the activity proposed by the holding company can reasonably be expected to produce benefits to the public. * * *[10] (12 C.F.R. § 225.4(b)(2).)
 
 
 36
 Petitioners interpret 'opportunity for hearing,' as provided by § 4(c)(8) of the Act, as requiring the Board to afford them, at their request, a formal hearing with the right of cross-examination of witnesses.[11] They base this interpretation upon the legislative history of the 1970 amendment. See S.Rep.No.91--1084, 91st Cong., 2d Sess. (1970), 1970 U.S.Code Cong. & Admin.News 5519, 5534; H.Rep.No.91--387, 91st Cong., 2d Sess. 16 (1969); Conf.Rep.No.91--1747, 91st Cong., 2d Sess. (1970), 1970 U.S.Code Cong. & Admin.News 5566. See generally O'Brien, Federal Reserve: Administrative Procedure and the Right to be Heard under the Bank Holding Company Act, 91 Banking L.J. 856, 867--70 (1974). The Board disagrees with petitioners' interpretation of the statute and contends that the oral presentation enabled the petitioners fully to present their views as contemplated by the Act.
 
 
 37
 The Board takes the position that it need not conduct a hearing if no material issue of fact exists. E.g., FPC v. Texaco, 377 U.S. 33, 39--44, 84 S.Ct. 1105, 12 L.Ed.2d 112 (1964). The confidential record discloses that the staff recommended against any hearing for this reason alone. They reasoned that legislative and not adjudicative facts were at issue. The Board adopted this reasoning and denied a hearing because issues presented by the petitioners, the protestants before the Board, related to practices in the municipal bond industry as a whole rather than to Evensen and Banco in particular. The Board correctly concluded that a formal hearing on Banco's application would not materially assist it in resolving questions of industry-wide applicability.
 
 
 38
 The distinction between legislative facts and adjudicative facts has been ably expressed by Professor Davis in his treatise on administrative law:
 
 
 39
 Adjudicative facts are the facts about the parties and their activities, businesses, and properties. Adjudicative facts usually answer the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case. Legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law and policy and discretion. (1 K. Davis, Administrative Law Treatise § 7.02 at 413 (1958).)
 
 
 40
 Professor Davis emphasizes the need to conduct hearings when adjudicative facts are in issue:
 
 
 41
 Facts pertaining to the parties and their businesses and activities, that is, adjudicative facts, are intrinsically the kind of facts that ordinarily ought not to be determined without giving the parties a chance to know and to meet any evidence that may be unfavorable to them, that is, without providing the parties an opportunity for trial. The reason is that the parties know more about the facts concerning themselves and their activities than anyone else is likely to know, and the parties are therefore in an especially good position to rebut or explain evidence that bears upon adjudicative facts. (Id.)
 
 
 42
 In the Board's view, the protestants (petitioners here) had raised only issues of legislative fact prior to the oral presentation. These issues were:
 
 
 43
 (1) whether the banks which serve as paying agents for State and local government bond proceeds are generally designated by the bond purchasers or by the governmental issuers;
 
 
 44
 (2) Whether the underwriters of State and local government bond issues are generally chosen on the basis of sealed bids;
 
 
 45
 (3) whether the recommendations of State and local government bond consultants generally are publicly available, e.g., in the form of official minutes of a city council; and
 
 
 46
 (4) whether the confidentiality of information in the possession of a corporation can be maintained where that information may be of value to affiliates of that corporation.
 
 
 47
 We accept the Board's characterization of these issues as legislative rather than adjudicative. However, the record reveals that the protestants also raised other issues. These issues were:
 
 
 48
 (1) whether the high premium that Banco is willing to pay for Evensen's shares represents its expectation of monopoly profits from their investment;
 
 
 49
 (2) how personnel will be interchanged between Banco and Evensen and how long Banco's personnel would remain with Evensen before returning to Banco;
 
 
 50
 (3) whether the present management of Evensen will continue with Evensen;
 
 
 51
 (4) whether Evensen would geographically expand and whether there is adequate competition already in those areas;
 
 
 52
 (5) to what uses any capital infusion by Banco into Evensen would be put; and
 
 
 53
 (6) to what extent Evensen will engage in activities beyond the scope of 12 C.F.R. § 225.4(a)(5) and within the area of management consulting.
 
 
 54
 These are not legislative issues. They are adjudicative.
 
 
 55
 Section 4(c)(8) of the Act requires the Board to evaluate Banco's application by reference to the following standards:
 
 
 56
 (T)he Board shall consider whether its performance by an affiliate of a holding company can reasonably be expected to produce benefits to the public, such as greater convenience, increased competition, or gains in efficiency, that outweigh possible adverse effects, such as undue concentration of resources, decreased or unfair competition, conflicts of interests, or unsound banking practices. In orders and regulations under this subsection, the Board may differentiate between activities commenced de novo and activities commenced by the acquisition, in whole or in part, of a going concern; * * *. (12 U.S.C. § 1843(c)(8).)
 
 
 57
 The Board's regulation tracks the Act with the following language:The Board will publish in the FEDERAL REGISTER notice of any such application and will give interested persons an opportunity to express their views (including, where appropriate, by means of a hearing) on the question whether performance of the activity proposed by the holding company can reasonably be expected to produce benefits to the public, such as greater convenience, increased competition, or gains in efficiency, that outweigh possible adverse effects, such as undue concentration of resources, decreased or unfair competition, conflicts of interests, or unsound banking practices. (12 C.F.R. § 225.4(b)(2).)
 
 
 58
 Moreover, the legislative history of § 4(c)(8) confirms that Congress intended the Board to scrutinize with great care applications such as that of Banco, lest the expansion of bank holding companies result in anticompetitive and other abuses rather than benefit to the public. See Conf.Rep.No.91--1747, 91st Cong., 2d Sess. (1970), 1970 U.S.Code Cong. & Admin.News 5567--5569.
 
 
 59
 The six issues raised by petitioners during the proceedings before the Board bear directly upon the proposed operations of Evensen as a subsidiary of Banco. They remain unanswered. The record reflects that the petitioners conceded Banco and Evensen to be ethical businesses, but this concession scarcely serves as any substitute for concrete evidence, obtained by testimony under oath, and cross-examination, of the manner in which Banco intended to operate, control, and benefit from its prospective subsidiary.
 
 
 60
 By its order approving Banco's acquisition of Evensen the Board recognized the conflict of interest inherent in Banco's acquisition of Evensen. On the one hand stands Banco's desire as a bank to maximize investment in it by states and municipalities while on the other hand stands its duty, as an adviser of the same states and municipalities in bonding matters, to facilitate selection of the optimum paying agent and depository from among several bidders, usually other banks, seeking their bond business. The issues raised by the petitioners relating to conflict of interest in Banco's proposed operation of Evensen pose serious adjudicative facts. They query 'how, why (and) with what motive or intent' Banco intends to manage Evensen. They 'are intrinsically the kind of (issues of) facts that ordinarily ought not to be determined without giving the parties a chance to know and to meet any evidence that may be unfavorable to them, that is, without providing the parties an opportunity for trial.'
 
 
 61
 Petitioners requested an opportunity to inquire into the special facts underlying Banco's acquisition of Evensen and Evensen's activities as a prospective subsidiary of Banco. We believe that the petitioners were entitled to pursue this line of inquiry at a formal hearing. The Board concluded that a formal hearing was not warranted because, inter alia, these factual issues were 'immaterial to the Board's decision, (were) not susceptible to cross-examination, or (were) rendered moot in light of the Board's conditional approval' of the application. (Order Conditionally Approving Acquisition of T. G. Evensen & Associates, Inc. at 10 (Board of Governors, August 16, 1973).) Such a conclusion may be reached only after evaluation of the evidence, not before. Consequently, we hold that the Board must provide the petitioners an opportunity for a formal hearing at which these issues may be resolved. See, e.g., Hess & Clark, Division of Rhodia, Inc. v. Food & Drug Administration, 495 F.2d 975, 993--995 (D.C. Cir. 1974). Cf. Citizens Committee to Save WEFM v. FCC, 506 F.2d 246, 259--62, 265--66 (D.C. Cir. 1974) (en banc); Henderson Trumbull Supply Corp. v. NLRB, 501 F.2d 1224, 1228--1230 (2d Cir. 1974). Compare Weinberger v. Hynson, Westcott & Dunning, Inc., 412 U.S. 609, 620--622, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973); Cooper Laboratories, Inc. v. Commissioner, 501 F.2d 772, 785--786 (D.C. Cir. 1974); Dyestuffs & Chemicals, Inc. v. Flemming, 271 F.2d 281, 286--287 (8th Cir. 1959), cert. denied, 362 U.S. 911, 80 S.Ct. 681, 4 L.Ed.2d 619 (1960).
 
 
 62
 The Board entered its order conditionally approving the acquisition here in question and denying to petitioners a full hearing in the face of a reversal of a previous recommendation of approval by the Federal Reserve Bank of Minneapolis. Such action by the Federal Reserve Bank of Minneapolis should have alerted the Board to the need for a full hearing before coming to a final decision on the difficult problems posed by the acquisition. Instead, the Board seems to have disregarded in a cavalier fashion the Bank's recommendation by declining even to schedule a full evidentiary hearing, as requested by the petitioners.
 
 
 63
 Under these circumstances, the Board's order should be vacated and the Board instructed to conduct a trial-type hearing, under its Rules of Practice for Formal Hearings, on the following issues:
 
 
 64
 (1) whether the high premium that Banco is willing to pay for Evensen's shares represents its expectation of monopoly profits from their investment;
 
 
 65
 (2) how personnel will be interchanged between Banco and Evensen and how long Banco's personnel would remain with Evensen before returning to Banco; SU (3) whether the present management of Evensen will continue with Evensen;
 
 
 66
 (4) where Evensen would geographically expand and whether there is adequate competition already in those areas;
 
 
 67
 (5) to what uses any capital infusion by Banco into Evensen would be put; and
 
 
 68
 (6) to what extent Evensen will engage in activities beyond the scope of 12 C.F.R. § 225.4(a)(5) and within the area of management consulting.
 
 
 69
 These six issues bear directly upon the propriety, under § 4(c)(8) of the Bank Holding Company Act, of the Board's approval of the acquisition. In particular, their resolution is crucial to a determination of whether the public benefits reasonably to be expected from the acquisition override any possible adverse effects of the conflict of interest inherent in the acquisition.
 
 
 70
 We do not suggest by this opinion that any list of unanswered factual issues will unlock the door to a trial-type hearing. Congress by the 1970 amendment to the Bank Holding Company Act intended to reduce the volume of formal hearings in a burgeoning field in an effort not to overtax the supervisory capabilities of the Board. Informal supervision has characterized regulation in the banking industry, 1 K. Davis, Administrative Law Treatise § 4.04 at 247, and should be encouraged. In this case, however, the acquisition of Evensen by Banco would move bank holding companies into an uncharted field, and the public interest will best be served by exposing all of its implications and potential conflicts to an adversary examination. Compare Bell Telephone Co. v. FCC, 503 F.2d 1250, 1263--1268 (3d Cir. 1974).
 
 
 71
 We remand this cause to the Board for further proceedings consistent with this opinion.[12]
 
 
 
 [1]
 The petitioners include Springsted, Inc., Ehlers Associates, Inc., and Peterson & Popovich, direct competitors of Evensen in the state and local government financial consulting business, and American Bancorporation, American National Bank and Trust Company, and Commercial State Bank, direct competitors of Banco in the banking business
 
 
 [2]
 In their entirety, § 1843(a) and (c)(8) provide as follows:
 (a) Except as otherwise provided in this chapter no bank holding company shall--
 (1) after May 9, 1956, acquire direct or indirect ownership or control of any voting shares of any company which is not a bank,
 (c) The prohibitions in this section shall not apply to any bank holding company which is (i) a labor, agricultural, or horticultural organization and which is exempt from taxation under section 501 of Title 26, or (ii) a company covered in 1970 more than 85 per centum of the voting stock of which was collectively owned on June 30, 1968, and continuously thereafter, directly or indirectly, by or for members of the same family, or their spouses, who are lineal descendants of common ancestors; and such prohibitions shall not, with respect to any other bank holding company, apply to--
 (8) shares of any company the activities of which the Board after due notice and opportunity for hearing has determined (by order or regulation) to be so closely related to banking or managing or controlling banks as to be a proper incident thereto. In determining whether a particular activity is a proper incident to banking or managing or controlling banks the Board shall consider whether its performance by an affiliate of a holding company can reasonably be expected to produce benefits to the public, such as greater convenience, increased competition, or gains in efficiency, that outweigh possible adverse effects, such as undue concentration of resources, decreased or unfair competition, conflicts of interests, or unsound banking practices. In orders and regulations under this subsection, the Board may differentiate between activities commenced de novo and activities commenced by the acquisition, in whole or in part, of a going concern(.) (12 U.S.C. § 1843(a), (c)(8) (1970).)
 
 
 [3]
 37 Fed.Reg. 5775 (March 21, 1972)
 
 
 [4]
 For the text of § 4(c)(8), 12 U.S.C. § 1843(c)(8), see note 2, supra. In its order of September 1, 1972, advising protestants, petitioners here, of the opportunity for the oral presentation, the Board described the presentation in these terms:
 The proceeding will consist of presentations of statements in oral or written form, together with any supporting or supplementary written submissions allowed by the Hearing Officer, all of which are to be addressed to the factors set forth in section 4(c)(8) of the Bank Holding Company Act as applied to this application. (Footnote omitted).
 
 
 [5]
 Governor Brimmer dissented and would deny the application on the ground that the applicant has the financial and managerial resources to commence the proposed activity de novo rather than by acquisition
 
 
 [6]
 The Board of Governors approved the acquisition subject to the following conditions:
 (1) Evensen shall not make available to Applicant or its other subsidiaries any information with respect to its clients not available at the same time to others; (2) the affiliation of Evensen and Applicant shall be clearly disclosed on all advertising and letterheads; (3) Evensen shall continue to offer its services on an explicit fee basis; (4) where Evensen-advised issues are not to be sold pursuant to competitive bids, Applicant and its other subsidiaries may not participate in their sale; and (5) Evensen shall continue its practices of (i) recommending that the purchaser of the bonds be authorized to name the paying agent; (ii) refraining from participation in the selection of a depository for the bond proceeds; and (iii) recommending that the issuer obtain bids before selecting an interim investment outlet for bond proceeds. (Order Conditionally Approving Acquisition of T. G. Evensen & Associates, Inc., at 12 (Board of Governors, Aug. 16, 1973).)
 
 
 [7]
 The text of § 4(b) provides in its entirety as follows:
 (b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include--
 (1) a statement of the time, place, and nature of public rule making proceedings;
 (2) reference to the legal authority under which the rule is proposed; and
 either the terms or substance of the proposed rule or a description of the subjects and issues involved.
 Except when notice or hearing is required by statute, this subsection does not apply--
 (A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or
 (B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest. (5 U.S.C. § 553(b).)
 
 
 [8]
 Although the Board offered no explanation for amendment of the regulation at the time of amendment, it later did so, at the request of this court, during the pendency of the instant review action. It made this explanation in lieu of disclosing certain of its records to petitioners
 
 
 [9]
 See relevant text, note 2, supra
 
 
 [10]
 The full text of this regulation reads:
 (2) Acquisition of going concern. A bank holding company may apply to the Board to acquire or retain the assets of or shares in a company engaged solely in activities described in paragraph (a) of this section by filing an application with its Reserve Bank (Form F.R. Y--4). Every such application shall be accompanied by a copy of a notice of the proposal (in substantially the same form as F.R. Y--4B) published within the preceding 30 days in a newspaper of general circulation in the communities to be served. The Board will publish in the FEDERAL REGISTER notice of any such application and will give interested persons an opportunity to express their views (including, where appropriate, by means of a hearing) on the question whether performance of the activity proposed by the holding company can reasonably be expected to produce benefits to the public, such as greater convenience, increased competition, or gains in efficiency, that outweigh possible adverse effects, such as undue concentration of resources, decreased or unfair competition, conflicts of interests, or unsound banking practices. (12 C.F.R. § 225.4(b)(2).)
 
 
 [11]
 The Board concedes that the oral presentation of October 17, 1972, was not the equivalent of a formal hearing as prescribed by the Board's rules. A formal hearing under the Board's rules, 12 C.F.R. §§ 263.1 to .21, 'shall be conducted in accordance with the provisions of chapter 5 of title 5 of the United States Code.' 12 C.F.R. § 263.6(b). That is to say, the hearing must conform to § 7 of the APA, 5 U.S.C. § 556, providing for, inter alia, testimony under oath, cross-examination of witnesses, and, where authorized by law, compulsory process. The Board takes the position that the Bank Holding Company Act does not authorize it to exercise subpoena power
 
 
 [12]
 This disposition makes unnecessary any discussion of the merits of the Board's approval of Banco's application, petitioners' third claim of error