**INDEPENDENT INSURANCE AGENTS OF AMERICA, INC., and Independent Insurance Agents of Missouri, Petitioners,**

v.

**BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent,**

**and**

**Mercantile Bancorporation, Inc., and MBI Insurance Agency, Inc., Intervenor-Respondents.**

**No. 80–1879.**

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1981.

Decided Sept. 1, 1981.

Rehearing and Rehearing En Banc Denied Nov. 16, 1981.
See 664 F.2d 177.

572

Alice Daniel, Asst. Atty. Gen., Civ. Div., Dept. of Justice, Neal L. Petersen, Gen. Counsel, J. Virgil Mattingly, Jr., Asst. Gen. Counsel, Stephen L. Siciliano, Atty., argued, Board of Governors of the Federal Reserve System, Washington, D. C., for respondent.

Thomas E. Wilson, Washington, D. C., for petitioners.

Thompson & Mitchell, David F. Ulmer, argued, Peter A. Fanchi, St. Louis, Mo., for intervenor.

Before HEANEY and HENLEY, Circuit Judges, and NICHOL,* Senior District Judge.

HEANEY, Circuit Judge.

On August 22, 1980, the Board of Governors of the Federal Reserve System (Board) approved, without a formal evidentiary hearing, the application of Mercantile Bancorporation, Inc., (Mercantile) to engage in the sale of credit-related property and casualty insurance. Mercantile, the largest banking organization in Missouri, planned to sell insurance at each of its fifty-five banking locations in Missouri through a nonbank subsidiary to be called MBI Insurance Agency. The Independent Insurance Agents of America, Inc., and the Independent Insurance Agents of Missouri (collectively referred to as the IAAA) vigorously resisted Mercantile's application, and now request that this Court set aside the Board's approval of Mercantile's application and remand the entire matter to the Board for an evidentiary hearing. For the reasons set forth below, we vacate the Board's decision and grant IAAA's request.

I

The Bank Holding Company Act, 12 U.S.C. § 1841 *et seq.,* generally prohibits a bank holding company from engaging in nonbanking activities. 12 U.S.C. § 1843. The principal exception to this rule is contained in 12 U.S.C. § 1843(c)(8) which provides that bank holding companies may acquire "shares of any company the activities of which the Board after due notice and opportunity for hearing has determined (by

order or regulation) to be so closely related to banking or managing or controlling banks as to be a proper incident thereto."

The Board, in reviewing an application under 12 U.S.C. § 1843(c)(8), must make two separate determinations before such application can be approved. First, it must determine whether, as a general matter, the proposed activity is closely related and incidental to banking. *See, e. g., Connecticut Bankers Ass'n v. Board of Governors of the Federal Reserve System,* 627 F.2d 245, 249 (D.C.Cir.1980). Second, it must determine whether the public benefits of the proposed activity will outweigh potential adverse effects. *Id. Accord, Independent Ins. Agents of America v. Board of Governors of the Federal Reserve System,* 646 F.2d 868, 869 (4th Cir. 1981) (per curiam). Twelve U.S.C. § 1843(c)(8) provides that in making the second determination, often referred to as the "public benefits" test, the Board must consider whether approval of the application "can reasonably be expected to produce benefits to the public, such as greater convenience, increased competition, or gains in efficiency, that outweigh possible adverse effects, such as undue concentration of resources, decreased or unfair competition, conflicts of interests, or unsound banking practices." Under this two-step procedure, the Board can find that the proposed activity is closely related to banking in general but, nevertheless, deny the application because it fails the "public benefits" test. *See, e. g., Connecticut Bankers Ass'n, v. Board of Governors of the Federal Reserve System, supra,* 627 F.2d at 249–250, 250 nn. 19–21.

The Board previously determined by regulation [1] that the sale of credit-related prop-

---

* The Honorable Fred J. Nichol, United States Senior District Judge for the District of South Dakota, sitting by designation.

1. 12 C.F.R. § 225.4(a)(9) (1980), provides in part:

(a) *Activities closely related to banking or managing or controlling banks.* In accordance with the procedures set forth in paragraphs (b) and (c) of this section, any bank holding company may engage, or retain or

acquire an interest in a company that engages, solely in one or more of the activities specified below, * * *. The following activities have been determined by the Board to be so closely related to banking or managing or controlling banks as to be a proper incident thereto:

\* \* \* \* \* \*

(9) Acting as insurance agent or broker in offices at which the holding company or its

erty and casualty insurance is an activity so closely related to banking or managing or controlling banks as to be a proper incident thereto. *Independent Ins. Agents of America v. Board of Governors of the Federal Reserve System, supra,* 646 F.2d at 869 (citing 12 C.F.R. § 225.4(a)). That regulation is not directly challenged here. The Board then determined, without conducting an evidentiary hearing, that the "public benefits" test was satisfied. It concluded

> that the procompetitive nature of Applicant's proposal can reasonably be expected to produce benefits to the public. These clear public benefits easily outweigh the speculative adverse effects alleged by Protestant with regard to unfair competition, which adverse effects the Board has concluded are not likely to occur. Indeed, *the de novo nature of this proposal alone is sufficient to outweigh such speculative adverse effects.* There is no evidence that any other adverse effects may be associated with this proposal, such as undue concentration of resources or unsound banking practices. [Footnote omitted and emphasis added.]

The Board also concluded, in response to the IIAA's repeated requests, that an evidentiary hearing "would serve no useful purpose."

## II

Under the Bank Holding Company Act, the Board cannot lightly dismiss a protestant's request for an evidentiary hearing. *Connecticut Bankers Ass'n v. Board of Governors of the Federal Reserve System, supra,* 627 F.2d at 251. Where a material fact is contested and the protestant has made a minimal showing that a substantial inquiry would be worthwhile, the Board must conduct a full evidentiary hearing on that issue. *Id. See also* Conf. Rep. No. 91–1747, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Ad. News 5519, 5566 (the Board "should hold hearings in all cases where a contest is raised").

Mercantile argues that hearings are not required where the market entry is a "de novo" one. We do not agree. While 12 U.S.C. § 1843(c)(8) permits the Board to "differentiate between activities commenced de novo and activities commenced by the acquisition * * * of a going concern," the statute does not permit the Board to automatically approve all de novo entries.[2] *See Florida Ass'n of Ins. Agents v. Board of Governors of the Federal Reserve System,* 591 F.2d 334, 341 (5th Cir. 1979). When such an application is presented, the Board must carefully consider many

---

subsidiaries are otherwise engaged in business (or in an office adjacent thereto) with respect to the following types of insurance:
  (i) Any insurance for the holding company and its subsidiaries;
  (ii) Any insurance that (a) is directly related to an extension of credit by a bank or a bank-related firm of the kind described in this regulation, or (b) is directly related to the provision of other financial services by a bank or such a bank-related firm, or (c) is otherwise sold as a matter of convenience to the purchaser, so long as the premium income from sales within this subdivision (ii)(c) does not constitute a significant portion of the aggregate insurance premium income of the holding company from insurance sold pursuant to this subdivision (ii)[.]

**2.** The Senate Report for the Bank Holding Company Act Amendments of 1970 stated: "The committee believes that an activity commenced de novo *will tend to* have procompeti-

tive effects, and consequently should be viewed more favorably than the commencement of an activity through the acquisition of an existing concern." S.Rep.No.91–1084, 91st Cong., 2d Sess. 16, *reprinted in* [1970] U.S.Code Cong. & Ad.News 5534 (emphasis added). Similarly, the Conference Report for the 1970 Amendments stated that:

> where a bank holding company enters a new market *de novo,* or through acquisition of a small firm, as opposed to acquisition of a substantial competitor, *its desire to succeed in its new endeavor is more likely to be competitive.* This legislation specifically emphasizes the importance of the manner in which a bank holding company may enter new activities. Such consideration will be particularly important in the context of expansion by bank holding companies into new geographic markets.

Cong.Rep. No. 91–1747, *supra,* [1970] U.S.Code Cong. & Ad.News at 5568 (emphasis added).

factors under the public benefits test including, but not limited to, the precise manner in which the "de novo" entry is to be affected, the dangers of undue concentration of resources, decreased or unfair competition, conflicts of interest and unsound banking practices. *See* 12 U.S.C. § 1843(c)(8); Conf.Rep. No. 91–1747, *supra*, [1970] U.S.Code Cong. & Ad.News at 5567–5570 (detailing the anticompetitive evils which may result from additional bank holding company activities).

### III

In this case, the Board rejected the IIAA's arguments that Mercantile's application would not result in a net benefit to the public. Specifically, the Board rejected the IIAA's contention that the sale of credit-related property and casualty insurance by MBI would give rise to coercive or voluntary tying practices. The IIAA argued that credit customers would believe, based on either overt or subtle actions by Mercantile loan agents, that they would be more likely to receive loans if they purchased insurance through MBI. The Board specified four essential reasons for rejecting these contentions: (1) there was no evidence that Mercantile has previously engaged in coercive tying;[3] (2) because Mercantile lacks dominance in the relevant insurance markets, credit customers could effectively avoid possible tying practices by seeking credit from other sources; (3) absent unusual circumstances, there are generally no signifi-

cant adverse effects inherent in performance of credit-related insurance sales by bank holding companies on a de novo basis;[4] and (4) Mercantile's commitments that provision of financial services by its banking and nonbanking subsidiaries would not be conditioned expressly or impliedly on the purchase of insurance through MBI "sufficiently assure against any possibility of voluntary tying as an adverse effect."

Second, the Board rejected the IIAA's efforts to require Mercantile to demonstrate how it would competitively price insurance services. In doing so, the Board simply concluded that the "de novo" entry of MBI into the credit-related insurance market represented a "clear public benefit." In addition, the Board was persuaded by Mercantile's proffered commitment to offer insurance at the lowest reasonable cost to the customer.

Finally, the Board, in confusing fashion, rejected the IIAA's twofold contentions that: (1) because Mercantile's insurance agents would also be loan agents, the resulting combination of functions would deprive customers of the benefits of a full-time insurance professional and result in harmful conflicts of interest; and (2) customers would be inconvenienced because Mercantile cannot renew insurance coverage once the underlying extension of credit is repaid. The Board did not address the combination of functions argument[5] and, although first stating that some important gains in convenience and efficiency "might

---

**3.** The Board also stressed that it is unlawful for a bank holding company to require its customers to purchase insurance from it in order to receive credit. *See* 12 C.F.R. § 225.4(c) (1980) which provides in part:

(c) *Tie-ins, alterations, relocations, consolidations.* Except as otherwise provided in an order in a particular case, *the following conditions shall apply with respect to every acquisition consummated or activity engaged in on the authority of section 4(c)(8) of the Act: (1) The provision of any credit, property or services involved shall not be subject to any condition which, if imposed by a bank, would constitute an unlawful tie-in arrangement under section 106 of the Bank Holding Company Act Amendments of 1970 * * *. [Emphasis added.]*

**4.** The Board stated that the IIAA's contentions to the contrary were "in substance an attack on the relevant regulation," 12 C.F.R. § 225.-4(a)(9). The Board concluded that any challenge to the regulation was foreclosed by *Alabama Ass'n of Ins. Agents v. Board of Governors of the Federal Reserve System*, 533 F.2d 224 (5th Cir. 1976), *modified on rehearing*, 558 F.2d 729 (1977) (per curiam), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978).

We do not agree that 12 C.F.R. § 225.4(a)(9) is challenged here. The IIAA's arguments focus solely on the "public benefits" portion of the Board's two-step inquiry. We, therefore, do not address any issues relating to the validity of 12 C.F.R. § 225.4(a)(9).

**5.** *See* note 8, *infra*.

result" from Mercantile's proposal, it reversed itself and concluded that, on balance, the proposal "may not" result in significant overall gains in convenience or efficiency. Because of this final conclusion, the Board expressly declined to rely on Mercantile's contentions on these issues.

## IV

■■■ In our view, the Board erred in refusing to grant the IIAA's repeated requests for an evidentiary hearing. The Board cannot deny a request for an evidentiary hearing when, as here, it is presented with legitimate contentions which place materials facts in dispute. The Board characterized the IIAA's arguments as "speculative" and stated that there was no evidence of potential adverse effects which outweighed the procompetitive presumption of "de novo" activity. The Board's refusal to hold an evidentiary hearing, however, prevented the IIAA from substantiating its claim that MBI's activities would not result in overall net benefits to the public. The IIAA, at all times, stood ready to present evidence in opposition to, and challenge any evidence presented in favor of, Mercantile's application.

Although the Board's reasoned judgments in making its net public benefits determination are entitled to "some deference," *Connecticut Bankers Ass'n v. Board of Governors of the Federal Reserve System, supra,* 627 F.2d at 254, we conclude that further inquiry is necessary. Upon remand, the Board is directed to allow the presentation of documentary evidence and testimony on the following issues:[6] (1) the precise manner in which the "de novo" entry is to be affected; (2) the general cost of insurance to be issued by MBI in comparison to insurance issued by independent agencies;[7] (3) the potential conflict of interest which may result when, as planned, Mercantile's loan officer and insurance agent will be the same person;[8] (4) the potential for tying (coercive and voluntary) the issuance of loan approval to the purchase of insurance; and (5) the competitive impact of MBI's entry into the relevant insurance market in relation to existing insurance agencies.[9]

We previously held that the Board must, under 12 U.S.C. § 1843(c)(8), "scrutinize with great care" applications to engage in nonbanking activities "lest the expansion of bank holding companies result in anticompetitive and other abuses rather than benefit to the public." *American Bancorp, Inc. v. Board of Governors of Federal Reserve System,* 509 F.2d 29, 38 (8th Cir. 1974). Because the Board failed to scrutinize Mercantile's application with great care and because of its undue reliance on the "de novo" nature of Mercantile's application, we

---

6. The Board may also address other issues which are relevant to its net public benefits analysis.

7. The Board recognized that Mercantile is under a fiduciary obligation to make insurance available at the lowest practicable cost to the consumer. Board's Brief at 30 (citing 36 Fed. Reg. 15,525 (1971)). In considering this fiduciary obligation on remand, we find it unnecessary for the Board to elicit specific insurance rate quotations from Mercantile. The Board must, however, consider general proposed insurance rates before it can determine the validity of the IIAA's claims that MBI's rates will be much higher than those offered by independent agents in the relevant markets. Quite simply, we consider potential cost to consumers an essential factor in the Board's net public benefits determination under 12 U.S.C. § 1843(c)(8).

8. The Board did not comprehensively consider the potential harms which could arise where a

single person acts as both loan officer and insurance agent; it merely stated that conflicts would not arise because Mercantile's insurance agents would be compensated solely through their salaries. Although the Board argues that the IIAA has not presented unique facts to warrant an evidentiary hearing, we agree with the IIAA that Mercantile's proposal to have the same person perform both lending and insurance functions poses potential dangers apparently not present in previous cases in this area. This combination of functions aspect, while not the sole reason for our remand order, particularly warrants factual development at an evidentiary hearing.

9. The evidence to be presented on this issue will necessarily overlap, to a certain extent, with the evidence presented on the previously specified issues.

vacate the Board's August 22, 1980, decision and remand for an evidentiary hearing.

Vacated and remanded.