# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-3263

_____

| | | |
|---|---|---|
| Peabody Coal Co.; | * | |
| Old Republic Insurance Co., | * | |
| | * | |
| Petitioners, | * | |
| | * | Petition for Review of an Order |
| v. | * | of the Benefits Review Board, |
| | * | United States Department of Labor. |
| Director, Office of Workers' | * | |
| Compensation Programs, United | * | |
| States Department of Labor; | * | |
| Mary B. Ricker; Mary D. Ricker, | * | |
| | * | |
| Respondents. | * | |

_____

Submitted:  April 21, 1999
Filed: June 22, 1999

_____

Before McMILLIAN, LOKEN, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

The statute that provides benefits to survivors of coal miners who suffered from black lung disease was amended in 1972 to define widow as including some surviving divorced wives as well as wives at the time of death.  Frank Ricker was covered by the statute and when he died the Director, Office of Workers' Compensation Programs, Department of Labor (DOL), awarded full benefits to his surviving wife and to his surviving divorced wife.  Ricker's employer, Peabody Coal Co., and its insurer, Old

Republic Insurance Co., maintained that under the applicable statutory and regulatory interpretations the women were only entitled to partial benefits. The Benefits Review Board upheld the award, and Peabody and Old Republic filed this petition for review of the board's order. We affirm.

I.

The Black Lung Benefits Act (the Act), 30 U.S.C. § 901 et seq., provides for the payment of benefits when a coal miner is totally disabled by pneumoconiosis or was totally disabled by pneumoconiosis at the time of his death[1] or died due to pneumoconiosis. See id. § 921(a). Frank Ricker filed a claim for benefits under the Act in 1976 and was awarded benefits in 1981, which continued until his death in January 1990. At the time Frank died, his surviving wife was Mary B. Ricker whom he had married in July 1984. He was also at that time still required to make support payments to his prior wife, Mary D. Ricker; their marriage had lasted more than ten years.

The Act provides that when a miner receiving benefits dies, "benefits shall be paid to his widow (if any) at the rate the deceased miner would receive such benefits." Id. § 922(a)(2). When the Act was passed in 1969, the statute defined widow simply to mean the miner's wife at the time of his death. See Federal Coal Mine Health and Safety Act of 1969, Pub. L. No. 91-173, § 402(e), 83 Stat. 742, 793. Three years later, however, in 1972, Congress amended the definition of widow to include any surviving divorced wife who had been married to a miner for ten years immediately preceding their divorce and who had been entitled to or receiving substantial support from the

---

[1]This category of benefits is only available for claims filed within a certain period of time; Frank Ricker's claim falls within this category.

miner at the time of his death.[2] See Black Lung Benefits Act of 1972, Pub. L. No. 92-303, sec. 1(c)(3), § 402(e), 86 Stat. 150, 152.

There is no dispute in this case that both of Frank's surviving wives are entitled to benefits under the Act, but the parties disagree on the amount of benefits the wives should receive. Under the 1972 amendment Mary D. was entitled to benefits as Frank's surviving divorced wife, and the DOL determined that she is entitled to the same benefit as Mary B., his wife at the time of his death.[3] Its position is that each should receive benefits at the same rate Frank would have. The petitioners argue on the other hand that each should receive only 75% of Frank's entitlement, consistent with the DOL manual in effect at the time he died.

The DOL's Coal Mine (Black Lung Benefits Act) Procedure Manual, ch. 2-900, § 8(b), (Feb. 1980), directed that benefits for more than one surviving widow be calculated in the same manner as for more than one surviving child. Under the 1980 manual the benefit to be shared would thus be calculated by taking the amount of the deceased miner's basic benefit and adding 50% for two survivors, 75% for three survivors, or 100% for four or more survivors. This augmented benefit would then be

_____

[2]The number of cases in which there could be more than one entitled widow is limited by the statutory requirements that the surviving divorced wife have been married to the miner for at least ten years and been entitled to or receiving substantial support at the time of his death and that the surviving wife not be remarried. See 30 U.S.C. § 902(e). Neither side has presented any data on the frequency of claims from two surviving widows, but the DOL has represented that to the best of its knowledge the issue of the benefit amount has only been raised by an employer twice in cases reaching the federal courts — once in this case and once in Piney Mountain Coal Co. v. Mays, No. 97-2560, 1999 WL 274066, at *9–*11 (4th Cir. May 5, 1999).

[3]Although Mary B. had filed for divorce in December 1989, the divorce was apparently not finalized prior to Frank's death. Mary B. died in October 1998.

shared by the survivors, and the miner's surviving wife and surviving divorced wife would each receive 75% of the basic benefit (i.e., (100% + 50%) / 2).

When Frank died in 1990, the DOL awarded both Mary D. and Mary B. 100% of the basic benefit instead of calculating the benefits according to the method in the 1980 manual. Old Republic declined to pay the full amount, claiming that the DOL's calculation was incorrect. The DOL then provided petitioners with a copy of an internal 1988 memorandum from the Director of the Office of Workers' Compensation Programs (a unit within the DOL) to an Assistant Secretary. Our record does not include a copy of this memorandum, but does contain petitioners' response to the Director. Their response indicates that the internal memorandum suggested that in the author's opinion the Act could be interpreted either way, that the DOL had decided to change its policy to conform to that of the Social Security Administration (SSA),[4] and that it would apply its new interpretation retroactively. The Director's briefing represents that a 1988 review of the applicable statutes, regulations, and legislative history had led to the conclusion that the existing rule was "untenable,"[5] and that as a result the DOL changed its practice. This reevaluation and change of practice led to

---

[4]The Social Security Administration administers black lung claims filed through June 1973, the Social Security Administration and DOL have joint responsibility for claims filed from July to December 1973, and the DOL administers claims filed in 1974 or later. The Director asserts that the SSA paid both a surviving wife and a surviving divorced wife a full basic benefit. Petitioners argue, however, that the DOL manual rule was consistent with the SSA practice and rule. Nonetheless, petitioners' counsel stated in a 1992 letter to the DOL that his "file indicates[] SSA may have routinely ignored its own rule and paid a full primary benefit to each equal status survivor/spouse." Neither side has provided record evidence to establish what the SSA actually did at any particular time.

[5]This review followed an administrative law judge award of full basic benefits to both a surviving wife and a surviving divorced wife. The Director initially appealed the award, but then asked that the appeal be dismissed after concluding that the practice of not providing full basic benefits was not in accord with the Act as amended.

the publication in 1992 of a revised Coal Mine (Black Lung Benefits Act) Procedure Manual which stated the new rule that "a surviving spouse and a surviving divorced spouse [are] both . . . entitled to full basic benefits plus full augmentation." Coal Mine (Black Lung Benefits Act) Procedure Manual, ch. 2-900, § 8(f), (Dec. 1992).

Petitioners did not contest that benefits were due both women. Mary B. qualified for benefits as a surviving spouse since she had been married to Frank at the time of his death and was not remarried, and Mary D. qualified for benefits as a surviving divorced spouse since she had been married to Frank for at least ten years and received substantial monetary support from him. Petitioners argued to the DOL, however, that the change in widow benefit shares was a substantive change and therefore required notice and comment rule making. In May 1990 the DOL sent a letter to Old Republic stating: "At this time, you should go ahead and" make payments under the old rule, and the DOL would "get back to you at a later date regarding a decision on this matter." Old Republic then began paying Mary D. and Mary B. monthly benefits and reimbursed them for the missed January through April payments; all of these benefits were calculated using the old rule. On June 1, 1992, the DOL ordered Peabody to make all future payments according to the new rule and to issue supplemental checks for the amount underpaid from January 1990 through May 1992. The petitioners refused to pay the additional amount, and beginning with the July 1992 benefit, the DOL began sending monthly checks to Mary D. and Mary B. for the difference in benefits that the petitioners had refused to pay. The DOL also forwarded the matter for a hearing.

An administrative law judge (ALJ) ruled against Peabody,[6] concluding that the DOL had properly required a full basic benefit for each widow. The ALJ concluded that the DOL policy was consistent with Congressional intent, that notice and comment rule making was not required because the rule change was interpretative, and that the

---

[6]Old Republic was not listed as a party at this stage.

-5-

DOL had not applied a new rule retroactively because it had simply corrected a previous misinterpretation of statutes and regulations. The ALJ ordered Peabody to pay both Mary D. and Mary B. the full basic benefit and to reimburse the DOL for the amounts it had paid to the widows. Peabody and Old Republic appealed the decision and order to the Benefits Review Board (BRB). The BRB affirmed in part and vacated in part. It affirmed the ALJ's decision that paying a full basic benefit to both widows was proper under the Act, but remanded the case for the ALJ to reexamine whether the rule change was interpretative or substantive under the "substantial impact test" in American Bancorp., Inc. v. Board of Governors of Fed. Res. Sys., 509 F.2d 29, 33 (8th Cir. 1974).

After analyzing petitioners' arguments in light of American Bancorp., the ALJ issued a supplemental decision and order reinstating his earlier decision and order. Petitioners' motion for reconsideration was denied, and they appealed to the BRB, which affirmed. Peabody and Old Republic then filed this petition for review.

## II.

Petitioners argue on appeal that the rule the DOL applied to determine benefits for Frank's surviving widows is contrary to the settled interpretation of the statute as reflected in the 1980 DOL procedure manual. They also argue that the new rule is substantive rather than interpretative, see 5 U.S.C. § 553(b)(3)(A), so the DOL violated the Administrative Procedure Act because it did not have authority to institute the rule without using the notice and comment procedures required by 5 U.S.C. § 553.[7] Finally,

---

[7]In January 1997 a proposed comprehensive revision of the black lung regulations was published for notice and comment. See 62 Fed. Reg. 3337 (1997). These proposed regulations included a new paragraph, 20 C.F.R. § 725.212(b), that would formally promulgate the new rule. See 62 Fed. Reg. at 3350–51, 3390. Final regulations have not yet been published.

they argue that the new rule cannot be applied retroactively. The DOL's position is that the BRB correctly approved the ALJ's decision that both Mary D. and Mary B. were entitled to a full basic benefit and that the new rule is interpretative rather than substantive. We are thus presented with questions of statutory interpretation and the appropriate standard of review on this petition for review of an agency action.

The Fourth Circuit has recently considered the issue of benefit allocation to two widows in Piney Mountain Coal Co. v. Mays, No. 97-2560, 1999 WL 274066, at *9–*11 (4th Cir. May 5, 1999). In that case it affirmed the BRB's awards of full basic benefits to the coal miner's widow and to his former spouse. The court observed from its study of the Act and the regulations that "a surviving widow is a beneficiary in her own right" so her situation is not the same as where multiple dependants require augmentation of the miner's basic benefit. Id. at *10. It would be contrary to the regulatory scheme "to deem just one of the widows a primary beneficiary and the other as a dependant augmentee." Id. It reviewed the legislative history and the Director's reasons for reinterpreting the Act and concluded that the Director's interpretation was reasonable. See id. at *10–*11.[8]

We must begin our inquiry by asking "whether Congress has directly spoken to the precise question at issue." Chevron v. Natural Resources Defense Council, 467 U.S. 837, 842 (1984). When asking this question we are to "employ[] traditional tools of statutory construction." Id. at 843 n.9. If we determine that "Congress has not directly addressed the precise question at issue," then we must ask whether the agency's interpretation "is based on a permissible construction of the statute." Id. at

---

[8]Mays was decided subsequent to the oral argument in this case. Petitioners have recently filed a motion for leave to file a supplemental brief discussing Mays and what the parties there argued. Since we have already received and reviewed relevant portions of the Mays briefs pursuant to Fed. R. App. P. 28(j) and are familiar with the points discussed in the supplemental brief, the motion to file it is denied.

843. If the agency interpretation is reasonable, a court must defer to it. See id. at 844.[9] Mays used this deferential standard of review without deciding whether Congress has already made the point clear. In this case the Director asks for no deference. He requests that we treat the new rule as not having the force and effect of law and as being subject to de novo review.

We begin by examining the Act itself. The Act states that a deceased miner's "widow (if any)" shall receive benefits "at the rate the deceased miner would receive such benefits if he were totally disabled," 30 U.S.C. § 922(a)(2), and the 1972 amendment included within the definition of widow both a surviving wife and a surviving divorced wife who meets certain qualifications. See Black Lung Benefits Act of 1972, Pub. L. No. 92-303, sec. 1(c)(3), § 402(e), 86 Stat. 150, 152 (codified at 30 U.S.C. § 902(e)). The Act as amended thus says on its face that someone meeting the expanded definition of widow is entitled to receive the same benefits as the deceased miner would receive, which would be a full basic benefit with augmentation. See 30 U.S.C. § 922(a)(1), (4). The statutory language thus provides for full benefits to both Mary D. and Mary B.[10] "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous . . . judicial inquiry is complete." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253–54 (1992) (quotation omitted).

---

[9]There is also authority indicating that less deference is due when an interpretative rule is being reviewed. See, e.g., Shalala v. Guernsey Mem'l Hosp., 514 U.S. 87, 99 (1995) (interpretative rules "do not have the force and effect of law and are not accorded that weight in the adjudicatory process"); Batterton v. Francis, 432 U.S. 416, 425 n.9 (1977) (A "court is not required to give effect to an interpretative regulation.").

[10]Since neither Mary D. nor Mary B. are entitled to augmentation, full benefits in this case would be a full basic benefit without augmentation.

Not only does the text of the Act state that both a surviving wife and a qualifying surviving divorced wife are entitled to full benefits, but the structure of the Act also supports our reading of this language. At the same time Congress added surviving divorced wives to the definition of widow, it added provisions describing how to divide benefits among surviving children, dependent parents, and dependent siblings. See Black Lung Benefits Act of 1972, Pub. L. No. 92-303, sec. 1(b)(1), (2), § 412(a)(3), (5), 86 Stat. 150, 150–51 (codified as amended at 30 U.S.C. § 922(a)(3), (5)). Congress did not, however, make any provision for dividing benefits among widows. This strengthens the reading of the other language, reinforcing the intent for § 922(a)(2)'s full benefit to apply to each widow. Both the text and structure of the Act thus support the conclusion that Congress intended a surviving wife and a surviving divorced wife to each receive a full benefit.

Having concluded that Congress answered the question at issue in the text and structure of the Act, it is not necessary to consider whether the DOL's interpretation "is based on a permissible construction of the statute," Chevron, 467 U.S. at 843, nor what amount of deference to give that interpretation. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842–43.[11] Since both this court

---

[11]We of course recognize that the DOL, an agency with responsibility for administering the Act, interpreted it differently until after its review in 1988. To the extent that the Act were viewed as ambiguous, one would turn to the legislative history. See Blum v. Stenson, 465 U.S. 886, 896 (1984). The legislative history reveals that Congress intended the 1972 amendment to redefine the "term 'widow' . . . to conform to the Social Security Act definition." S. Rep. No. 92-743 (1972), reprinted in 1972 U.S.C.C.A.N. 2305, 2332.

The Social Security Act had been amended in 1965 to extend benefits to surviving divorced spouses. See Social Security Amendments of 1965, Pub. L. No. 89-97, sec. 308(b)(1), § 202(e)(1), 79 Stat. 286, 376–77. Congress had then made clear its intent regarding the payment of benefits to more than one widow: "Payment of a

and the DOL must give effect to Congressional intent that multiple widows each receive a full benefit, Mary D. and Mary B. are entitled to full benefits under the Act, and would be even if the DOL had never changed its rule.[12]

### III.

We conclude that Congress clearly intended the Act as amended to provide full benefits to qualifying widows. Accordingly, we affirm the order of the Benefit Review Board.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

wife's or widow's benefit to a divorced women would not reduce the benefits paid to any other person on the same social security account and such wife's or widow's benefit would not be reduced because of other benefits payable on the same account." S. Rep. No. 89-404 (1965), reprinted in 1965 U.S.C.C.A.N. 1943, 2047. Because Congress specifically intended to tie the definition of widow in the Act to its definition in the Social Security Act, we can infer a similar intent for widows' benefits. Cf. Wolf Creek Collieries v. Robinson, 872 F.2d 1264, 1266–67 (6th Cir. 1989). Since Congress did not intend to reduce social security benefits when paying more than one widow, it follows that Congress similarly intended each qualifying widow to receive full benefits under the Act.

[12]Because we apply the clear intent of Congress, we do not need to reach the issue of whether the agency interpretation amounts to an interpretative or substantive rule. We also note that neither the application of our de novo interpretation of the statute nor the application of a new agency rule that corrects an erroneous original interpretation of a statute is retroactive. See Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 135 (1936).